779 So.2d 148 (2001)
STATE of Louisiana
v.
Anthony ESKANO.
No. 00-KA-101.
Court of Appeal of Louisiana, Fifth Circuit.
January 30, 2001.
*149 Paul D. Connick, Jr., District Attorney, Terry M. Boudreaux, Alison Wallis, Gregory Kennedy, Assistant District Attorneys, *150 Gretna, LA, Attorneys for Plaintiff/Appellee.
Margaret S. Sollars, Louisiana Appellate Project, Thibodaux, LA, Attorney for Defendant/Appellant.
Panel composed of Judges GOTHARD, CANNELLA and McMANUS.
SOL GOTHARD, Judge.
The defendant, Anthony Eskano, was charged with possession with the intent to distribute a controlled dangerous substance, to wit: marijuana, in violation of LSA-R.S. 40:966A. After trial by a twelve person jury, defendant was found guilty of the lesser offense of attempted possession with intent to distribute marijuana. After the trial court denied the defendant's motions for new trial and post-verdict judgment of acquittal, defendant was sentenced to imprisonment at hard labor for a term of eight years. Thereafter, pursuant to a multiple offender bill of information, the defendant's original sentence was vacated, and the court sentenced defendant to imprisonment at hard labor for eight years without benefit of parole, probation or suspension of sentence pursuant to LSA-R.S. 15:529.1. This appeal followed.
At the trial of this matter, the state presented evidence to show that, on April 15, 1998, defendant, Anthony Eskano, along with Jimmy Franklin, sold marijuana to two subjects while standing on a footbridge located between Airline Drive and Mistletoe Street, an area well known for narcotics activity. The defense presented evidence to show that defendant did not sell nor intend to sell marijuana on the date in question.
Deputy Donald Clogher testified for the state that, in his three years with the Jefferson Parish Sheriff's Office Street Crimes Unit, he had been involved in approximately 500 narcotics investigations. The incident involving the defendant occurred on April 15, 1998 on a footbridge between Airline Drive and Mistletoe Street, which is located in one of the highest crime areas in Jefferson Parish. In the past, Clogher and other deputies have observed narcotics activity on the footbridge and arrested people in connection therewith.
On April 15, 1998, between 4:30 p.m. and 5:00 p.m., Clogher and other officers conducted a surveillance operation in the area of the Mistletoe footbridge. About 15 minutes to one-half hour before defendant's arrest, the officers positioned themselves so they could observe the activity on the bridge without the subjects being able to see them. Clogher and his partner, Heather Gorman, were in a vehicle on the Mistletoe Street side. Doyle and his partner, Randall Fernandez, were in a vehicle on the Airline Drive side. Clogher and Gorman were about four blocks from the footbridge, and Clogher used binoculars to see the activity in the area. Although Clogher did not have the best view among the four officers, he observed two black females approach the bridge on separate occasions, a few minutes apart. Defendant and Franklin were standing together in the middle of the footbridge. It appeared that defendant handed something to Franklin, and then Franklin approached the female and handed her a small object. The female handed Franklin what appeared to be currency. It appeared that Franklin then walked back to defendant and handed him what appeared to be the currency the female had just handed to Franklin. He observed the same series of transactions with a second female. The officers did not want to drive their cars into that area, because the investigation would have been compromised, i.e., Franklin and defendant would have seen the officers. Officers Clogher and Gorman approached the bridge to investigate the two subjects.
The other police unit approached from Airline Drive. Franklin and Eskano focused very intently on that unit, and they turned toward Mistletoe Street to leave the bridge. The two subjects appeared nervous. Clogher and Gorman then approached from Mistletoe. The two subjects *151 realized that there were two police vehicles coming toward them, one from each side of the bridge. Defendant took what appeared to be numerous objects out of his pocket and handed them to Franklin. Franklin and defendant began walking in different directions, and then Franklin ran. Defendant was unable to flee because Clogher's vehicle stopped right in front of him. Clogher apprehended defendant, who did not fight with Clogher or try to run when he was arrested. Clogher found $191.00 in currency on Eskano, but he did not find any narcotics.
Deputy Heather Gorman also testified at trial, and her testimony largely corroborated that of Clogher. Gorman testified for the state that, on April 15, 1998, she participated in an investigation that resulted in the arrest of Franklin and Eskano. Officer Doyle and his partner went to investigate first because they were coming from Airline Drive. After the two subjects saw Doyle, they started walking quickly toward Mistletoe. As they were walking toward Mistletoe, Gorman and Clogher got about a block and a half away from them, and Gorman saw defendant hand Franklin something. As the subjects walked off the footbridge, they were looking back at Airline Drive and did not see Gorman and Clogher approaching. Gorman and Clogher pulled up, and Franklin started running. Gorman chased Franklin but was unable to catch him, so she called Doyle and Fernandez on the radio to assist her. Doyle and Fernandez eventually caught Franklin in an empty lot. While Gorman did not observe the actual arrest of Franklin, she saw marijuana lying on the ground in the empty lot where Franklin was apprehended.
Deputy John Doyle, III also testified at trial, and his testimony largely corroborated that of Deputies Clogher and Gorman. Doyle testified for the state that he was working as a deputy with the Jefferson Parish Sheriff's Office Street Crimes Unit on April 15, 1998. Doyle was driving an unmarked police car eastbound on Airline Drive when he first saw defendant on the footbridge between Mistletoe Street and Airline Drive. Doyle and his partner saw the two subjects standing on the bridge, and they set up surveillance about 50 yards or one block from the footbridge during the surveillance.
Doyle observed a female pedestrian approach from the Mistletoe neighborhood, and speak with Franklin, who then walked over to defendant. Defendant reached into his pocket and gave Franklin an object. Franklin then walked back over to the female and engaged in a hand-to-hand transaction. Doyle saw the female exchanging currency for the object. Doyle testified that those actions were consistent with narcotics transactions. The female walked off, and Franklin returned to defendant and gave him the currency. Doyle could not see what the object exchanged was, but he could see the cash, because the subjects were counting it. Doyle also observed a transaction with another female that occurred in the same manner.
At that point, Doyle moved in from Airline Drive and told Clogher to maintain his position. Once the two subjects saw Doyle, they started walking quickly toward Mistletoe. As they were walking, they both were looking back at Doyle who slowed his vehicle down so he could maintain visual contact on them. Doyle told Clogher that the subjects were watching him (Doyle) and not Mistletoe. Clogher managed to pull up almost next to the subjects before they realized that Clogher was there. Once they realized he was there, Franklin ran and Clogher detained defendant. Doyle received a call for assistance from Gorman on the radio. Doyle and his partner responded to the call. They ran through an empty lot chasing Franklin, and Doyle saw Franklin throw bags everywhere. At that point, Doyle could not tell that the bags contained marijuana. Doyle and Fernandez picked up the objects. Franklin resisted, but was eventually apprehended.
At trial, Doyle testified that, when marijuana is packaged in small bags and found *152 in a large number, that indicates it is not for personal use, but for street-level sales. Distributors charge approximately $10.00 to $20.00 for each bag, and it is common for street-level narcotics distributors to keep numerous $20.00 bills on them, because the average narcotics sale on the streets involves $20.00 bills. Doyle stated that the only time a person would use $5.00 and $10.00 bills would be when he is dealing with very, very small bags of marijuana. Twenty-dollar bills are usually used in drug transactions involving crack cocaine and marijuana. On cross-examination, Doyle admitted that he never saw Eskano in possession of any marijuana.
Deputy Randall Fernandez also testified at trial, and his testimony largely corroborated that of Deputies Clogher, Gorman and Doyle.
On cross-examination, Fernandez admitted that he never saw currency change hands. There was a portion of Deputy Fernandez's report of the incident which had some white-out on it. The portion that had been added was, "Eskano reached into his pocket and removed object(s) ..." Fernandez was not sure if there was more than one object which exchanged hands between defendant and Franklin as they were walking away from the bridge.
Fernandez testified that, at the time of defendant's arrest, he and Franklin lived in Marrero and Bridge City, respectively, which are located on the West Bank in Jefferson Parish. The footbridge was located on the East Bank in Jefferson Parish. Fernandez did not know whether defendant had any relatives who might have lived in the area of the footbridge.
Daniel Waguespack testified for the state that he worked as a forensic scientist for the Jefferson Parish Sheriff's Office in the crime laboratory. He tested the material in four of the 12 plastic bags marked as state's exhibit 1 and identified it as marijuana.
Almeda Eskano, the defendant's sister, testified for the defense that her brother lived with his uncle on Elm Street in Metairie in April of 1998, and that he had lived with him for about four months. Ms. Eskano stated that she and her brother used to live at 2800 Mt. Kennedy Street in Marrero about three years ago. If defendant told police when he was arrested that he lived on Mt. Kennedy Street, then that information was false. Veronica Ann Picquet testified for the defense that defendant was her boyfriend and that she knew him in April of 1998. She claimed that, on April 13, 1998, she and defendant settled a lawsuit, and defendant picked up his check for $1,000.00. She and defendant went to her bank and deposited $300.00 in her bank account, and defendant kept the rest of it in his pocket.
Defendant testified that, on the date of his arrest, his home address was 304 North Elm Street. The police got the 2800 Mt. Kennedy Street address from his state ID. He got his ID reinstated in 1996, but his ID did not expire until 1999, so he never changed his address. Defendant stated that the police did not ask for his address and that the officers' testimony at trial was incorrect.
Defendant's version of the events was as follows. On April 15, 1998, defendant sold his car to a woman named Sheila. He stated that the date on the top of the written bill of sale was April 23rd because that is the date she owed him an additional $200.00. He collected the $500.00 from Sheila on the night of April 15, 1998, and went to Wal Mart and bought underwear, socks, a robe, and a color television for his father who had just had a massive heart attack. He went to the hospital to visit his father and stayed all morning; he then got on the bus to go home after he left the hospital. He got off the bus ten steps from his street, Elm Street. He walked straight across the footbridge onto Mistletoe Street. He did not see Franklin as he was crossing the footbridge. As he got to Mistletoe Street, he saw a police car turning onto Mistletoe. The police car pulled over in front of him. The officer got out *153 and told him to get against the car. The officer went into his pocket and pulled out his money and his wallet. The officer asked him where he got that kind of money from, and defendant told him that he gotten the money from his lawyer and that he had just sold his car. The officer then went over and talked to a girl. As he was doing so, a little boy ran by. The officer ran after him. Defendant asked the girl what the problem was, and she told him to shut up.
The officer went around the corner and caught Franklin and brought him back. Defendant claimed that he had never seen Franklin before in his life. The officer then went and talked to Franklin. When the officer came back, he had a handful of marijuana, which he claimed had just been sold to Franklin by defendant. Defendant testified that he told the officer that he "couldn't do this to him right now," that he was so upset about his father's illness that he got drunk every night, and that he had just broken up with his fiancee. Defendant asked Franklin to tell the officers that he had never seen Franklin before in his life, but Franklin said nothing. Defendant further testified that when he had left his home that morning, he had about $210.00 on him and that none of the money was from selling drugs that day. He further testified that upon arrest, he did not resist the police officers, and he did not run.
On cross-examination, defendant admitted that he was convicted of aggravated battery in 1996. Defendant claimed that all four officers lied during their testimony at trial.
In his first allegation of error, defendant argues that the trial court erred by not granting the defendant's challenge for cause of juror, Linda Holmes. He contends that he asked the court to excuse Ms. Holmes for cause because she had twice been a victim of crime. Defendant claims that Ms. Holmes stated she was not sure that she could be impartial based on her past experiences. He further argues that Ms. Holmes was never rehabilitated as a juror. Because the trial court refused to grant defendant's challenge for cause, defendant used a peremptory challenge to excuse Ms. Holmes. Defendant used all peremptory challenges prior to completion of the jury panel. The state responds that Ms. Holmes was rehabilitated when she stated that she did not think her past experience as a crime victim would affect her impartiality and, therefore, the trial court did not err in denying defendant's challenge for cause of Ms. Holmes.
La.C.Cr.P. art. 797 allows a defendant to challenge a potential juror for cause on the ground that the juror is not impartial.[1] In deciding whether to grant a challenge for cause, the trial court must evaluate the juror's responses during the entire voir dire examination. State v. Bourque, 622 So.2d 198, 227 (La.1993). A denial of a challenge for cause based on impartiality is not an abuse of discretion where, after further inquiry and instruction, the potential juror has demonstrated a willingness and ability to decide the case impartially and according to the law and evidence. State v. Copeland, 530 So.2d 526, 534 (La.1988), cert. denied, 489 U.S. 1091, 109 S.Ct. 1558, 103 L.Ed.2d 860 (1989). A trial court has great discretion in matters of a juror's fitness to serve, and its rulings on challenges for cause will not be disturbed unless the record of voir dire as a whole reveals an abuse of that discretion. State v. Roy, 95-0638 (La.10/4/96), 681 So.2d 1230, 1234, cert. denied, 520 U.S. 1188, 117 S.Ct. 1474, 137 L.Ed.2d 686 (1997).
*154 A review of the transcript on voir dire indicates Ms. Holmes stated twice that she did not think her past experience of being a victim of a crime would affect her impartiality. The trial court accepted Ms. Holmes' statement that she could act impartially as a juror at the trial. Accordingly, we find that the trial judge did not abuse his discretion in denying defendant's challenge for cause of juror, Linda Holmes.
In his second allegation of error, defendant argues that a mistrial should have been granted because the prosecutor made improper and prejudicial remarks about defense counsel during defense counsel's cross-examination of the state's witness, Deputy Randall Fernandez, regarding his report. During the cross-examination, defense counsel walked over to the jury box and attempted to show the jury the whited-out portion of Deputy Fernandez's report. The prosecutor objected and stated in front of the jury that defense counsel was attempting to publish a portion of a document to the jury without allowing them to view the entire document. Defense counsel requested a bench conference, which was granted. During the bench conference, the prosecutor and the defense counsel argued about the prosecutor's objection. Defense counsel claimed that the prosecutor was attempting to make the jury believe that he (defense counsel) was keeping something from them. While arguing, the prosecutor stated that defense counsel was conducting a trial by ambush. Defense counsel objected to the use of the phrase "trial by ambush," claimed that the prosecutor said those words loudly enough for the jury to hear, and accused the prosecutor of attempting to discredit the defendant before the jury. Defense counsel moved for a mistrial, which was denied. The defense claims that the prosecutor's remarks were improper and provided grounds for a mistrial because they appealed to prejudice rather than the evidence presented during trial, in violation of LSA-C.Cr.P. arts. 770[2], 771[3] and 775.[4]
*155 The decision to grant or deny a mistrial is within the sound discretion of the trial court. The denial of a motion for a mistrial will not be reversed on appeal unless the court has abused its discretion. State v. Ratcliff, 98-101 (La.App. 5 Cir. 2/23/99), 731 So.2d 356, writ denied, 99-1112 (La.9/3/99, 747 So.2d 541). Mistrial is a drastic remedy and is warranted only where remarks result in substantial prejudice sufficient to deprive defendant of a fair trial. State v. Overton, 618 So.2d 439 (La.App. 5 Cir.1993). A determination of whether prejudice has resulted lies within the sound discretion of the trial judge. State v. White, 593 So.2d 882 (La.App. 2 Cir.1992).
In the instant case, the prosecutor objected to defense counsel's attempt to show the jury the whited-out portion of Deputy Fernandez's report. The prosecutor stated in front of the jury that defense counsel was attempting to publish only a part of the report to the jury. Defense counsel requested a bench conference, which turned into a lengthy discussion regarding the matter. During the bench conference, the prosecutor stated, among other things, that defense counsel was conducting a "trial by ambush." Defense counsel claimed the phrase "trial by ambush" was said loudly enough for the jury to hear and moved for a mistrial, which was denied. We see nothing in the record to suggest that the jury overheard the remarks. We note that defense counsel also moved for an admonition to the jury, which was never ruled on apparently because, at the end of the bench conference, the trial judge overruled the state's objection and allowed defense counsel to show the jury only the whited-out portion of the report.
We find that the trial judge did not abuse his discretion in denying the defendant's motion for a mistrial. The trial judge conducted the trial, heard the remarks, and stood in the best position to assess its impact. He apparently did not find that the remarks resulted in substantial prejudice sufficient to deprive defendant of a fair trial, and neither do we. Accordingly, we find this allegation of error to be without merit.
In his third allegation of error, the defendant argues that the trial court erred by including an instruction on flight when it was not applicable to him. Defendant contends that the erroneous instruction prejudicially contributed to the verdict and provides grounds for reversal. The state argues that there was evidence that defendant tried to flee the scene and, therefore, the trial judge did not err by including the instruction on flight.
If there is testimony of flight after the crime was committed and the jury charge regarding flight is brief when considered in connection with the remainder of the charge, the instruction is neither erroneous nor prejudicial. State v. Bell, 97-896 (La.App. 5 Cir. 10/14/98), 721 So.2d 38, 41 (citing State v. Walker, 93-632 (La.App. 5 Cir. 1/31/95), 650 So.2d 363, writ denied, 95-0545 (La.6/23/95), 656 So.2d 1013).
An erroneous jury instruction is subject to harmless error review. State v. Jynes, 94-745 (La.App. 5 Cir. 3/1/95), 652 So.2d 91, 98. The appropriate standard for determining harmless error is "`not whether, in a trial that occurred without the error, a guilty verdict would surely have been rendered, but whether the guilty verdict actually rendered in the instant trial was surely unattributable to *156 the error.'" State v. James, 95-566 (La. App. 5 Cir. 11/28/95), 665 So.2d 581, 584 (citing Sullivan v. Louisiana, 508 U.S. 275, 279, 113 S.Ct. 2078, 2081, 124 L.Ed.2d 182 (1993)).
In the present case, based on the record before us, we find that the guilty verdict was amply supported by the other testimony and evidence. The jury charge, if erroneous, did not contribute to the verdict. We find this allegation of error to be without merit.
In his last allegation of error, defendant argues that the evidence was legally insufficient to support his conviction. He contends that the state's case rested entirely upon circumstantial evidence, and that there was no direct proof that he committed the crime for which he stood accused. Defendant further claims that he should be entitled to a post-verdict judgment of acquittal, because only circumstantial evidence was presented and not every reasonable hypothesis of innocence was excluded, in violation of LSA-R.S. 15:438.[5] The state maintains that the evidence presented at trial was sufficient to warrant a conviction.
The standard for reviewing the sufficiency of evidence was set forth in Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979), and adopted by Louisiana in State v. Abercrombie, 375 So.2d 1170, 1177-1178 (La.1979), cert. denied, Abercrombie v. Louisiana, 446 U.S. 935, 100 S.Ct. 2151, 64 L.Ed.2d 787 (1980). In Jackson, the court held that due process requires the reviewing court to determine "whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." Jackson, 443 U.S. at 319, 99 S.Ct. 2781.
In this case, defendant was charged with possession with the intent to distribute marijuana; however, he was convicted of the lesser charge of attempted possession with the intent to distribute marijuana, a violation of LSA-R.S. 40:966A.[6]
When circumstantial evidence is used to prove the commission of the offense, LSA-R.S. 15:438 provides that, "assuming every fact to be proved that the evidence tends to prove, in order to convict, it must exclude every reasonable hypothesis of innocence." State v. Captville, 448 So.2d 676, 678 (La.1984); State v. Wooten, 99-181 (La.App. 5 Cir. 6/1/99), 738 So.2d 672, 675, writ denied, 1999-2057 (La.1/14/00), 753 So.2d 208. Ultimately, evidence both direct and circumstantial, must be sufficient under Jackson to satisfy a rational juror that the defendant is guilty beyond a reasonable doubt. State v. Ortiz, 96-1609 (La.10/21/97), 701 So.2d 922, 930, cert. denied, 524 U.S. 943, 118 S.Ct. 2352, 141 L.Ed.2d 722 (1998).
At trial, the state and the defense presented two different versions of the facts. The state presented the testimony of Deputies Clogher, Gorman, Doyle and Fernandez, who testified that defendant and Franklin engaged in two transactions involving the selling of narcotics. Defendant claimed that he was not selling drugs on the date in question, and that he had *157 never sold drugs. He stated that the police officers were lying.
After hearing the testimony and evaluating the credibility of the witnesses, the jury apparently believed the state's witnesses and found defendant guilty of the lesser charge of attempted possession with intent to distribute marijuana. The question of the credibility of the witnesses is within the sound discretion of the trier of fact, who may accept or reject, in whole or in part, the testimony of any witness. The credibility of the witnesses will not be re-weighed on appeal. State v. Rowan, 97-21 (La.App. 5 Cir. 4/29/97), 694 So.2d 1052. We find that the evidence presented at trial was sufficient under the Jackson standard to support the defendant's conviction.
We have reviewed the record for errors patent, according to LSA-C.Cr.P. art. 920; State v. Oliveaux, 312 So.2d 337 (La.1975); State v. Weiland, 556 So.2d 175 (La.App. 5 Cir.1990), and note the following error. The record reflects that defendant was not advised properly of the time limit for filing an application for post conviction relief, as required by La.C.Cr.P. art. 930.8, because the trial judge failed to inform defendant that the time begins from the date that the conviction and sentence becomes final. Accordingly, we remand this case and order that the trial court inform defendant of the provisions of Article 930.8 by sending appropriate written notice to defendant within ten days of the rendition of this court's opinion and to file written proof in the record that defendant received the notice.
AFFIRMED AND REMANDED.
NOTES
[1] LSA-C.Cr.P. art. 797 provides in pertinent part:

Art. 797 Challenge for cause
The state or the defendant may challenge a juror for cause on the ground that:
(2) The juror is not impartial, whatever the cause of his partiality. An opinion or impression as to the guilt or innocence of the defendant shall not of itself be sufficient ground of challenge to a juror, if he declares, and the court is satisfied, that he can render an impartial verdict according to the law and the evidence;....
[2] LSA-C.Cr.P. art. 770 provides as follows:

Art. 770. Prejudicial remarks; basis of mistrial
Upon motion of a defendant, a mistrial shall be ordered when a remark or comment, made within the hearing of the jury by the judge, district attorney, or a court official, during the trial or in argument, refers directly or indirectly to:
(1) Race, religion, color or national origin, if the remark or comment is not material and relevant and might create prejudice against the defendant in the mind of the jury;
(2) Another crime committed or alleged to have been committed by the defendant as to which evidence is not admissible;
(3) The failure of the defendant to testify in his own defense; or
(4) The refusal of the judge to direct a verdict.
An admonition to the jury to disregard the remark or comment shall not be sufficient to prevent a mistrial. If the defendant, however, requests that only an admonition be given, the court shall admonish the jury to disregard the remark or comment but shall not declare a mistrial.
[3] LSA-C.Cr.P. art. 771 provides as follows:

Art. 771. Admonition
In the following cases, upon the request of the defendant or the state, the court shall promptly admonish the jury to disregard a remark or comment made during the trial, or in argument within the hearing of the jury, when the remark is irrelevant or immaterial and of such nature that it might create prejudice against the defendant, or the state, in the mind of the jury;
1. When the remark or comment is made by the judge, the district attorney, or a court official, and the remark is not within the scope of Article 770; or
2. When the remark or comment is made by a witness or person other than the judge, district attorney, or a court official, regardless of whether the remark or comment is within the scope of Article 770.
In such cases, on motion of the defendant, the court may grant a mistrial if it satisfied that an admonition is not sufficient to assure the defendant a fair trial.
[4] LSA-C.Cr.P. art. 775 provides as follows:

Art. 775. Mistrial; grounds for
A mistrial may be ordered, and in a jury case the jury dismissed, when:
(1) The defendant consents thereto;
(2) The jury is unable to agree upon a verdict;
(3) There is a legal defect in the proceedings which would make any judgment entered upon a verdict reversible as a matter of law;
(4) The court finds that the defendant does not have the mental capacity to proceed;
(5) It is physically impossible to proceed with the trial in conformity with law; or
(6) False statements of a juror on voir dire prevent a fair trial.
Upon motion of a defendant, a mistrial shall be ordered, and in a jury case the jury dismissed, when prejudicial conduct in or outside the courtroom makes it impossible for the defendant to obtain a fair trial, or when authorized by Article 770 or 771.
A mistrial shall be ordered, and in a jury case the jury dismissed, when the state and the defendant jointly move for a mistrial.
[5] LSA R.S. 15:438 sets forth as follows:

The rule as to circumstantial evidence is: assuming every fact to be proved that the evidence tends to prove, in order to convict, it must exclude every reasonable hypothesis of innocence.
[6] 40:966 Penalty for distribution or possession with intent to distribute narcotic drugs listed in Schedule 1; possession of marijuana

A. Manufacture; Distribution. Except as authorized by this part, it shall be unlawful for any person knowingly or intentionally:
(1) To produce, manufacture, distribute or dispense or possess with intent to produce, manufacture, distribute, or dispense, a controlled dangerous substance classified in Schedule I;
(2) To create, distribute, or possess with intent to distribute, a counterfeit controlled dangerous substance classified in Schedule I ...