811 So.2d 1026 (2002)
STATE of Louisiana
v.
Norman WILLIAMS.
No. 01-KA-1007.
Court of Appeal of Louisiana, Fifth Circuit.
February 26, 2002.
*1027 Bruce G. Whittaker, Louisiana Appellate Project, New Orleans, LA, for Appellant Norman Williams.
Paul D. Connick, Jr., District Attorney 24th Judicial District, Parish of Jefferson, State of Louisiana, Thomas J. Butler Counsel of Record on Appeal, Terry M. BoudreauxAppellate Counsel, Walter G. AmstutzTrial Counsel, Vincent Paciera, Jr.Trial Counsel, Assistant District Attorneys, Gretna, LA, for Appellee State of Louisiana.
Panel composed of Judges JAMES L. CANNELLA, MARION F. EDWARDS and SUSAN M. CHEHARDY.
*1028 JAMES L. CANNELLA, Judge.
The Defendant, Norman Williams, appeals from his convictions and sentences for four counts of armed robbery. We affirm.
In 1999, the Defendant was charged with four counts of armed robbery, violations of La. R.S. 14:64, and one count of receiving stolen things valued at more than $1,000, a violation of La.R.S. 14:69. A mistrial was granted in the first trial held in September of 2000. A second jury trial on the four armed robbery charges, Count 1,2,3 and 4, was held on March 13, 14 and 15, 2001[1] and the Defendant was found guilty on all counts.
On March 30, 2001, the Defendant filed a Motion for New Trial Alternatively Motion to Arrest the Judgment, which was denied that day. The Defendant waived statutory delays and the trial court sentenced him to 99 years' imprisonment at hard labor on each count, without benefit of parole, probation or suspension of sentence. The trial judge ordered that the sentences run concurrently.
The State filed a habitual offender bill of information on March 30, 2001, alleging the Defendant to be a third felony offender. The Defendant denied the allegations of the bill. After the hearing on June 15, 2001, the trial judge took the matter under advisement. On August 17, 2001, the trial judge found the Defendant to be a third felony offender, vacated his sentence as to Count 2 of the armed robbery convictions, and imposed an enhanced sentence of life imprisonment at hard labor without benefit of parole, probation or suspension of sentence. The trial judge further ordered the enhanced sentence to run concurrently with the sentences in Counts 1, 3, and 4.
At the trial of the armed robbery charges, Toni Causin (Causin), the manager of a branch of Iberia Bank located on Wall Boulevard in Harvey, testified that a robbery occurred at approximately noon on March 24, 1999. At the time, she was using a telephone behind the bank teller counter, when two men entered through the front door of the bank. The first man had a gun in his hand. He entered the office of Tonya Blondiau (Blondiau), a loan officer. The second man climbed over the counter where two bank tellers, Chastity Estes Hartman (Hartman) and Monica Wilson (Wilson), were working. He approached Causin, but did not say anything. Causin asked him whether he wanted money. The man said, "Yes, I want the cash." He also ordered the employees to get on the floor, then took money from the teller drawers of Hartman and Wilson, and from Shelly Fahrenholtz (Fahrenholtz), who was working at the drive-through teller station. The robber placed the money, approximately $25,000, in a blue nylon bag. Hartman testified that she started to hand the robber "bait" money from her drawer, but he refused and removed the money himself. Thus, he did not get the money with the dye package. However, she was able to activate the bank's silent alarm during the robbery.
Fahrenholtz testified that she saw both robbers. The second robber took money from Wilson, Hartman, and herself, but did not take bait money that she placed on the counter.
Blondiau testified that she was in her office near the bank's front entrance when the first robber entered with a gun. The man held the gun to her face and ordered her to lie on the floor. She activated the *1029 silent alarm. She did not see the second robber.
Nicole Geiger, a bank employee who was not working that day, entered the bank during the course of the robbery. She said that the first man pointed his gun at her as she entered the lobby and ordered her to get on the floor.
Causin testified that the man was of average height and build. Causin, Hartman, Wilson, and Fahrenholtz testified that he wore a blue chambray shirt with white buttons, blue jeans, cotton work gloves, and grey tennis shoes with velcro fastenings. His face was covered with a black ski mask and he had a baseball cap on his head. They identified the clothing at trial through photographs and a bank video.
After the robbery, the two men left the building through the front door. From a window, Causin, Hartman, Wilson, Fahrenholtz, and Blondiau observed a white Toyota Camry with two men inside leave the bank's parking lot. The witnesses recognized the robbers from their attire. Causin recorded the last three numbers of the car's license plate, "180." Blondiau called the police. The witnesses later identified a white Toyota Camry located at the detectives' bureau of the sheriff's office as the car that they saw leaving the bank's parking lot, based on the lights on the back and the license plate number.
Detective John Carroll of the Jefferson Parish Sheriff's Office was working a private security detail at a Wal-Mart store on Behrman Highway when he heard a report of the robbery on his police radio. He watched for the white Toyota Camry, believing the suspects would use Behrman Highway as an escape route. He saw the car, its license plate bearing the last three digits "180," traveling along Behrman Highway toward Algiers. It was occupied by a black male. Detective Carroll, who was dressed in uniform, followed the car in an unmarked police vehicle. The car went through two red lights, and began to speed and weave in and out of traffic, but traffic forced him to stop at the corner of Behrman Highway and General DeGaulle Drive.
Detective Carroll exited his car and trained his gun on the suspect. He ordered the man to stop, but the subject drove away, and went through a red light at the corner of Holiday Drive and Behrman Highway. A vehicle driven by Rosa Salgado ran into the side of the Camry. The suspect then exited the car and fled on foot. Detective Carroll pursued the man for a short distance before he apprehended the man whom he identified at trial as the Defendant. Detective Carroll informed the Defendant of his rights and placed him under arrest. He conducted a pat-down search of the Defendant's outer clothing. He did not find any weapons, money, mask, or nylon bag, and did not see the Defendant discard any objects during the chase.
Detective Carroll and Sergeant Ferd Hebert stated that the clothing worn by the Defendant when he was arrested was the same as described by the bank employees. At trial, Detective Carroll further identified a pair of gloves that he discovered on the floorboard of the car which the Defendant was driving when apprehended, the shirt worn by the Defendant, and the Defendant's shoes.
The car driven by the Defendant when he was arrested was later identified as belonging to Donna Santos (Santos). She testified at trial that her 1991 white Toyota Camry had disappeared several days before the date of the robbery. She identified a photograph of a car introduced by the State as her car. Santos further stated that the gloves found in the car did not belong to her.
*1030 Karl Burge, a crime scene technician with the Jefferson Parish Sheriffs Office, testified that he lifted a shoe print from the teller counter, in the spot where witnesses said that the second robber placed his foot. Kim Colomb of the Louisiana State Police, an expert in footprint and tire print comparison, examined the shoe print and compared it to an impression which she made from one of the Defendant's shoes seized by police. She was not able to determine whether the shoe and the print were an exact match, but stated that the print had the same tread pattern as that of the shoe.

MISTRIAL
On appeal, the Defendant argues that the trial court erred in denying his motion for mistrial after the prosecutor elicited testimony from Santos that the car in which he was alleged to have fled the robbery scene had been stolen from her days earlier. The Defendant argues that the mention of the stolen car constituted impermissible other crimes' evidence.
On March 13, 2001, the Defendant filed a Motion to Sever and Motion in Limine, in which he requested the trial judge to sever Count 5, the possession of stolen property charge, from the four armed robbery counts, and to prohibit mention of the Defendant's possession of stolen property at his trial on the four armed robbery charges. The State agreed. However, the State nevertheless called the car's owner to testify at trial. Out of the jury's hearing, the Defendant objected and moved for a mistrial, arguing that the testimony constituted an improper reference to the crime charged in Count 5. The State countered that Santos was simply establishing a foundation for questions regarding the ownership of the gloves found in the car following the Defendant's arrest. The trial judge denied the mistrial motion. Santos subsequently testified that she did not recognize the gloves in evidence and that she did not leave them in the Toyota Camry.
Generally, evidence of other crimes is inadmissible at trial because of the risk of grave prejudice to the Defendant. State v. Curtis, 99-45, pp. 5-6 (La.App. 5th Cir.7/27/99), 739 So.2d 931, 937. La. C.Cr.P. art. 770 provides, in pertinent part:
Upon motion of a Defendant, a mistrial shall be ordered when a remark or comment, made within the hearing of the jury by the judge, district attorney, or a court official, during the trial or in argument, refers directly or indirectly to:
. . . .
(2) Another crime committed or alleged to have been committed by the Defendant as to which evidence is not admissible.
Mistrial is a drastic remedy which should be employed only where remarks result in substantial prejudice sufficient to deprive the Defendant of a fair trial. State v. Eskano, 00-101, p. 14 (La.App. 5th Cir.1/30/01), 779 So.2d 148, 155. A determination of whether prejudice has resulted lies within the sound discretion of the trial judge. Id.
Article 770 does not ordinarily apply to testimony by a state witness, since a witness is not considered a "court official" for purposes of the article. However, an impermissible reference to another crime deliberately elicited by the State would be imputable to the State and would therefore trigger the provisions of Article 770. State v. Ware, 00-194, p. 15 (La.App. 5th Cir.8/28/01), 795 So.2d 495, 504.
In State v. Edwards, 97-1797, p. 20 (La.7/29/99), 750 So.2d 893, 906, cert. denied, 528 U.S. 1026, 120 S.Ct. 542, 145 L.Ed.2d 421 (1999), the Louisiana Supreme Court held:

*1031 [A] comment must not "arguably" point to a prior crime; to trigger mandatory mistrial pursuant to Article 770(2), the remark must "unmistakably" point to evidence of another crime. State v. Babin, 336 So.2d 780 (La.1976) (where reference to a "mug shot" was not unmistakable reference to a crime committed by Defendant); State v. Harris, 258 La. 720, 247 So.2d 847 (1971) (where no crime was evidenced by a police officer's reference to obtaining Defendant's photograph from the Bureau of Investigation). In addition, the imputation must "unambiguously" point to the Defendant. State v. Edwards, 406 So.2d 1331, 1349 (La.1981), cert. denied sub nom. Edwards v. La., 456 U.S. 945, 102 S.Ct. 2011, 72 L.Ed.2d 467 (1982). The Defendant has the burden of proving that a mistrial is warranted.
Here, the testimony did not unmistakably point to evidence of another crime. Even if the testimony was other crimes' evidence, it did not unambiguously point to the Defendant as having been the perpetrator of a car theft. There might have been other reasons why the Defendant was in possession of Santos' car. Santos simply said that her car was missing and that the glove found in the car was not hers. Thus, we find that the motion for mistrial was properly denied.

EXCESSIVE SENTENCE
The Defendant argues that his sentence of life imprisonment as a third felony offender is unconstitutionally excessive. Although the Defendant filed a Motion to Reconsider Sentence as to his original sentences, he failed to do so following his habitual offender sentencing. He also failed to make a specific oral objection at the time of the re-sentencing.
La.C.Cr.P. art. 881.1 provides that a Defendant may file a motion to reconsider sentence within 30 days of sentencing, but requires that the motion be made orally at the time of sentencing, or in writing, and that it set forth the specific grounds on which the motion is based. The failure to file a motion to reconsider sentence, or to state the specific grounds on which the motion is based, precludes a defendant from raising those grounds on appeal. State v. Mims, 619 So.2d 1059 (La.1993); State v. Holmes, 94-907 (La.App. 5th Cir.3/15/95), 653 So.2d 642, 646. In Mims, the Louisiana Supreme Court was silent as to whether the failure to comply with Article 881.1 precludes even a claim of constitutional excessiveness. However, this Court usually considers the issue of whether the sentence was constitutionally excessive. See: State v. Tribbit, 00-153 (La. App. 5th Cir.8/29/00), 767 So.2d 901; State v. Stec, 99-633 (La.App. 5th Cir.11/30/99), 749 So.2d 784, 789; State v. Richmond, 98-1015 (La.App. 5th Cir.3/10/99), 734 So.2d 33, 38.
Both the United States and Louisiana constitutions prohibit the imposition of excessive or cruel punishment. U.S. Const. Amend. 8 La. Const. of 1974, Art. I, Sect. 20; Richmond, 734 So.2d at 38. A sentence is generally considered excessive if it is grossly disproportionate to the offense or imposes needless and purposeless pain and suffering. Richmond, 734 So.2d at 38; State v. Lobato, 603 So.2d 739, 751 (La.1992). A sentence is grossly disproportionate if, when the crime and punishment are considered in light of the harm done to society, it shocks the sense of justice. However, the sentence will not be set aside, absent a showing of manifest abuse of the trial court's wide discretion to sentence within statutory limits. Richmond, 734 So.2d at 38. The trial judge is afforded wide discretion in determining a sentence and, if the record supports the sentence imposed, the court of appeal will not set aside a sentence for excessiveness. La.C.Cr.P. art. 881.4(D); Richmond, 734 *1032 So.2d at 38. Nonetheless, a sentence may be reviewed for excessiveness even though it is within statutory range. Richmond, 734 So.2d at 38.
The enhanced sentence of life imprisonment imposed on the Defendant as a third felony offender was the mandatory minimum under La.R.S. 15:529.1 A(1)(b)(ii). At the time the Defendant committed the underlying offenses, that subsection provided:
If the third felony or either of the two prior felonies is a felony defined as a crime of violence under R.S. 14:2(13) or as a violation of the Uniform Controlled Dangerous Substances Law punishable by imprisonment for more than twelve years, the person shall be imprisoned for the remainder of his natural life, without benefit of parole, probation, or suspension of sentence.
Here, the Defendant's underlying conviction was for armed robbery, a crime of violence. The judge was technically required to impose a mandatory life sentence. However, if a trial court finds that an enhanced punishment mandated by the Habitual Offender Law makes no "measurable contribution to acceptable goals of punishment" or that the sentence amounts to nothing more than "the purposeful imposition of pain and suffering" and is "grossly out of proportion to the severity of the crime," the trial court has the option and duty to reduce such sentence to one that would not be constitutionally excessive. State v. Dorthey, 623 So.2d 1276, 1280 (La.1993).
It is presumed that a mandatory minimum sentence under the Habitual Offender Law is constitutional. State v. Johnson, 97-1906, p. 7 (La.3/4/98), 709 So.2d 672, 676; State v. Barnes, 01-489, p. 2 (La.App. 5th Cir.10/17/01), 800 So.2d 973. A trial court may only depart from the mandatory sentence if it finds clear and convincing evidence in the record that would rebut the presumption of constitutionality. Johnson, at p. 8, 709 So.2d at 676. The burden is on the Defendant to rebut the presumption of constitutionality by showing:
[he] is exceptional, which in this context means that because of unusual circumstances this Defendant is a victim of the legislature's failure to assign sentences that are meaningfully tailored to the culpability of the offender, the gravity of the offense, and the circumstances of the case.
Id., quoting State v. Young, 94-1636, pp. 5-6 (La.App. 4th Cir.10/26/95), 663 So.2d 525, 528, writ denied, 95-3010 (La.3/22/96), 669 So.2d 1223. The Louisiana Supreme Court has cautioned that downward departures from mandatory minimum sentences should only be made in rare cases. State v. Lindsey, 99-3256, p. 5 (La.10/17/00), 770 So.2d 339, 343; Johnson, p. 8, 709 So.2d at 676-677.
At the time of the Defendant's original sentencing, the State informed the trial judge that the Defendant had been convicted of a prior armed robbery and had been sentenced to serve 99 years. A Certificate of Parole admitted at the habitual offender hearing showed that the Defendant was released on parole in May of 1996. He committed the instant offenses only three years later. The State further related that the Defendant had been convicted of simple escape. The trial judge commented:
All right. This Court listened to the testimony. I am firmly convinced that Mr. Williams was in fact the participant in this armed robbery. I watched the testimony of these women. How they got through it as well as they did is beyond me. They all had been trained, obviously. They knew what they needed to do and they did it.... They were all frightened, certainly. They were all *1033 afraid that they were going to lose their lives. For those reasons. I am going to sentence the Defendant to ninety-nine years on each count....
(R., p. 598).
The Defendant did not make a Dorthey argument in the trial court, nor does he provide support for his argument on appeal. Thus, he has not met his burden of rebutting the presumption of constitutionality. See: State v. Brown, 01-160 (La. App. 5th Cir.5/30/01), 788 So.2d 667. Furthermore, the record shows that he is not the type of offender contemplated by the Dorthey court. Thus, we find that a downward deviation from the mandatory sentence is not warranted and that the trial judge properly sentenced the Defendant.

PATENT ERROR
We have reviewed the record for patent errors, according to La.C.Cr.P. art. 920; State v. Oliveaux, 312 So.2d 337 (La.1975); State v. Perrilloux, 99-1314 (La.App. 5th Cir.5/17/00), 762 So.2d 198, 206. After our review, we find none.
Accordingly, the Defendant's convictions and sentences are hereby affirmed.
AFFIRMED.
NOTES
[1] The State dismissed Count 5 receiving stolen things valued at more than $1000 on April 12, 2001.