740 So.2d 216 (1999)
STATE of Louisiana
v.
Kent TAYLOR.
No. 99-KA-296.
Court of Appeal of Louisiana, Fifth Circuit.
July 27, 1999.
*218 Harry J. Morel, Jr., District Attorney, Jerry Rome, Assistant D.A., Hahnville, LA, for Plaintiff-Appellee.
Margaret Smith Sollars, Appellant Counsel, Thibodaux, LA, for Defendant-Appellant.
Panel composed of Judges EDWARD A. DUFRESNE, Jr., SOL GOTHARD and ROBERT L. LOBRANO, Judge Pro Tempore.
DUFRESNE, Judge.
The St. Charles Parish District Attorney filed a bill of information charging the defendant, Kent Taylor, with armed robbery, in violation of LSA-R.S. 14:64. The matter proceeded to trial before a twelve person jury, at the conclusion of which the defendant was found guilty as charged. The trial judge subsequently sentenced the defendant to serve fifteen years at hard labor without benefit of probation, parole, *219 or suspension of sentence. It is from this conviction and sentence that the defendant now appeals.

FACTS
On the morning of June 4, 1998, the Hahnville Economical Food Store was robbed. Rebecca Zeringue, Mai Hoang, and Andy Nguyen were working at the store that day. On that particular morning, Ms. Zeringue was leaning down to put meat in the display case, when a black man wearing a ladies' stocking over his face approached her, pointed a gun at her, and told her to go to the front of the store. Ms. Hoang was at the register in the front of the store when she saw Ms. Zeringue and the defendant approach. The defendant handed Ms. Hoang a bag, told her to put the money in it, and also asked her where was "the man." Because there was no money in the register, Ms. Hoang told the defendant to go to the office and ask for "Andy." When the defendant went to the office, Ms. Hoang activated the store's silent alarm.
Mr. Nguyen, the store's manager, heard the defendant ask for "the man," and saw the defendant approach the office. The defendant asked for the money, and at first Mr. Nguyen hesitated. The defendant then pointed a silver gun at Mr. Nguyen and ordered him to put the money in the bag. After Mr. Nguyen put approximately $1,730.00 in the bag, the defendant told Mr. Nguyen to lie down and not to move, or he would shoot him. The defendant then picked up the phone in the office, threw it to the ground, and left the store.
Detective Gregory Harrell of the St. Charles Parish Sheriffs Office interviewed the victims on the day of the robbery. After meeting with them, he canvassed the area searching for suspects. Eleven year old Cody Gross testified at trial that he lived near the supermarket in Hahnville. On the day of the robbery, Cody flagged down Detective Harrell and told him he had just seen a suspicious man in the area riding a bicycle that belonged to his father. Detective Harrell testified that Cody told him the man went inside the residence at 607 Sycamore Street. Later, the officer determined that the defendant and Leo Williams lived at that residence. At trial, Cody identified the defendant as the man he saw on his father's bicycle on the day of the robbery.
The defendant became a suspect after he was identified from photographs by Ms. Hoang. All three witnesses looked through approximately three books containing "mug shots." While Ms. Zeringue and Mr. Nguyen were unable to identify anyone from the books, Ms. Hoang positively identified the defendant as the robber in two of the photographs.
After Detective Harrell learned that Ms. Hoang had positively identified the defendant as the robber, a warrant was issued, and the defendant was arrested. After being advised of his Miranda rights, the defendant gave a statement admitting that he was on drugs and had robbed the store.
The defendant testified on his own behalf at trial. He admitted that he had given a statement to Detective Harrell, but said that the statement was a lie. He said he told Detective Harrell what he thought the officer wanted to hear. The defendant stated that he had patronized the Hahnville Economical Food Mart on occasion, but denied that he had committed the robbery.

JUROR CHALLENGES
In his first assignment of error, the defendant contends that the trial court erred in denying his challenges for cause during voir dire of prospective jurors Patrick Dufrene and Gary Percle. He specifically asserts that Patrick Dufrene should have been excused for cause because of his law enforcement background. The defendant further contends that both prospective jurors Patrick Dufrene and Gary Percle should have been excused for cause *220 because they were personally acquainted with the prosecutor.[1]
LSA-C.Cr.P. art. 797 provides, in pertinent part, as follows:
The state or the defendant may challenge a juror for cause on the ground that:
* * *
(2) The juror is not impartial, whatever the cause of his partiality. An opinion or impression as to the guilt or innocence of the defendant shall not of itself be sufficient ground of challenge to a juror, if he declares, and the court is satisfied, that he can render an impartial verdict according to the law and the evidence;
* * *
(3) The relationship, whether by blood, marriage, employment, friendship, or enmity between the juror and the ... district attorney, or defense counsel, is such that it is reasonable to conclude that it would influence the juror in arriving at a verdict;
It is well settled that relationship to a law enforcement officer is not, of itself, grounds for a challenge for cause. Rather, the question presented is whether the prospective juror could assess the credibility of each witness independent of his or her relationship with members of law enforcement. State v. Morris, 96 1008 (La.App. 1 Cir. 3/27/97), 691 So.2d 792, writ denied, 97-1077 (La.10/13/97), 703 So.2d 609.
A challenge for cause should be granted, even when a prospective juror declares his or her ability to remain impartial, if the juror's responses as a whole reveal facts from which bias, prejudice or inability to render judgment according to law may be reasonably implied. However, when a prospective juror has voiced an opinion seemingly prejudicial to the defense, but after further inquiry, the juror demonstrates the ability and willingness to decide the case impartially according to the law and evidence, a challenge for cause is not warranted. The trial judge is afforded great discretion in determining whether cause has been shown to reject a prospective juror, and such determinations will not be disturbed on appeal unless a review of the voir dire as a whole indicates an abuse of that discretion. State v. Alberto, 95-540 (La.App. 5 Cir. 11/28/95), 665 So.2d 614, writ denied, 95-1677 (La.3/22/96), 669 So.2d 1222, writ denied, 96-0041 (La.3/29/96), 670 So.2d 1237.
The defendant first contends that the trial court erred in refusing his challenge for cause with respect to Mr. Dufrene because his experiences with law enforcement demonstrated bias. During voir dire, Mr. Dufrene stated that he worked at Entergy Corporation as an information technology consultant, although he used to be a deputy in St. Charles Parish. He further stated that his uncle, Shelby Dufrene, was currently a deputy with St. Charles Parish and that his brother, Elvin Dufrene, Jr., was formerly a deputy with St. Charles Parish, until he was transferred to Lafourche Parish a month before. When questioned by the trial judge whether he could evaluate a police officer's testimony the same as any other person, Mr. Dufrene responded affirmatively. Mr. Dufrene also agreed that merely because a person is a police officer does not automatically mean that the person is telling the truth. Mr. Dufrene also said that he knew the assistant district attorney, Jerry Rome, from high school. When the trial judge asked if he could give the defendant a fair trial despite his acquaintance with the prosecutor, Mr. Dufrene replied affirmatively.
In the present case, none of Mr. Dufrene's responses indicated that he would be biased or prejudiced because of his law *221 enforcement background. He was not currently employed as a police officer, and he affirmatively stated that he could evaluate a police officer's testimony in the same manner that he could evaluate anyone else's testimony. Given these circumstances, we find that the trial judge did not abuse his discretion in denying the defendant's challenge for cause of Mr. Dufrene.
The defendant next urges that Mr. Percle could not be fair and impartial because of his relationship with the prosecutor. During voir dire, Mr. Percle stated that the prosecutor had been his attorney on one or two occasions, approximately three to four years before. The trial judge asked Mr. Percle whether his association with the prosecutor would influence him in any way, and Mr. Percle responded, "I don't see why it should." The trial judge then asked Mr. Percle if he would automatically believe the arguments of the prosecutor more than the defense attorney, and Mr. Percle answered, "Not automatically, no." The trial judge further questioned Mr. Percle, "But would you give him more credibility than the other side because you know him, and now's the time to be honest," and Mr. Percle responded, "Possibly, possibly." Also, defense counsel asked the entire panel of prospective jurors whether they would rather see an innocent man sent to jail or a guilty man set free. Mr. Percle responded, "I'd send the innocent man to prison. I feel like with all the loopholes in the court, a guilty man has a good chance of getting off" However, when the prosecutor asked if he could "promise" that he would base his decision in the case upon the facts and evidence developed at trial, Mr. Percle answered affirmatively.
In the present case, Mr. Percle's voir dire responses indicated that he would be a fair and impartial juror. The assistant district attorney was not currently representing Mr. Percle and as noted above, Mr. Percle answered affirmatively when the prosecutor asked if he could give the defendant a fair trial. Based on a review of the entire voir dire, we find that the trial judge did not abuse his discretion in denying the defendant's challenges for cause of either Mr. Percle or Mr. Dufrene. Accordingly, we find that the issues raised by the defendant in this first assignment of error lack merit.

MOTION TO SUPPRESS
In his second assigned error, the defendant argues that the trial court erred in denying his motion to suppress statement. The defendant specifically contends that the state failed to prove that his statement was freely and voluntarily given and further that Detective Harrell coerced his confession with threats and promises.
Before a confession or inculpatory statement may be introduced into evidence, the state must affirmatively show that the statement was made freely and voluntarily and was not made under the influence of fear, duress, intimidation, threats, or promises. LSA-R.S. 15:451; LSA-C.Cr.P. art. 703(D); State v. Lavalais, 95-320 (La.11/25/96), 685 So.2d 1048, cert. denied, 522 U.S. 825, 118 S.Ct. 85, 139 L.Ed.2d 42 (1997). If the statement was elicited during custodial interrogation, the state must also show that the defendant was advised of his constitutional rights as set forth in Miranda v. Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966). State v. Castillo, 389 So.2d 1307 (La.1980).
A determination of voluntariness is made on a case-by-case basis, depending on the facts and circumstances of each situation. State v. Snyder, 97-226 (La.App. 5 Cir. 9/30/97), 700 So.2d 1082. The admissibility of a confession or statement is a question for the trial court, and its conclusions on the credibility and weight of the testimony regarding the voluntary nature of the confession or statement are accorded great weight and will not be overturned on appeal unless clearly unsupported by the evidence. State v. *222 Bentley, 96-795 (La.App. 5 Cir. 3/25/97), 692 So.2d 1207.
At the suppression hearing, Detective Harrell testified that the defendant was advised of his Miranda rights by another officer during booking. Detective Harrell said that he interviewed the defendant after booking, and that the defendant was "eager" to talk to him about the incident. After he advised the defendant of his Miranda rights, the defendant waived those rights, and gave an audio tape-recorded statement admitting he committed the robbery. Detective Harrell said that the defendant appeared to be "excited" during the statement, but that the defendant understood what he was saying and appeared to be alert and not intoxicated. The officer denied that he threatened the defendant or made any promises to help the defendant if he were to confess. The officer also noted that in the recorded statement, the defendant denied that he had been threatened or promised anything for his statement. Detective Harrell stated that during the very brief conversation he had with defendant prior to starting the recorded statement, he might have said that there was a good case against him. He also testified that the defendant asked him the penalty for armed robbery, and he read the applicable penalty for him. In contrast to the officer's testimony, the defendant, at the suppression hearing, testified that Detective Harrell told him he had a "damn good" case against him and told him that he would go to jail for 99 years unless he "help[ed]" the police. The defendant also said that Detective Harrell told him he would make sure the district attorney helped him if he admitted the crime. The defendant testified that he felt that he was being coerced into making a confession because of the officer's promises and statements to him. Although the defendant claimed that he felt coerced, he did answer affirmatively when the prosecutor asked whether he waived his rights and gave the statement freely and voluntarily.
In the present case, the trial judge heard testimony from both Detective Harrell and the defendant, and obviously afforded more credibility to the testimony of the police officer. We find that the record supports the trial judge's determination that the defendant's statement was freely and voluntarily given, after proper advisal of his constitutional rights. Accordingly, we reject the arguments raised by the defendant in this assignment of error and find that the trial judge did not abuse his discretion in denying the defendant's motion to suppress statement.

SUFFICIENCY OF THE EVIDENCE
In his third assigned error, the defendant challenges the sufficiency of the evidence used to convict him. He specifically contends that the state failed to prove that he was the perpetrator of the instant armed robbery.
The standard for testing the sufficiency of evidence requires that a conviction be based on proof sufficient for any rational trier of fact, viewing the evidence in the light most favorable to the prosecution, to find the essential elements of the crime beyond a reasonable doubt. Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979); State v. Rosiere, 488 So.2d 965 (La.1986); State v. Stoltz, 98-235 (La.App. 5 Cir. 8/25/98), 717 So.2d 1243.
Proof of armed robbery requires a showing that the defendant took something of value from another, while armed with a dangerous weapon. LSA-R.S. 14:64. Encompassed in proving the elements of the offense is the necessity of proving the identity of the defendant as the perpetrator and when the key issue in the case is identification, the state is required to negate any reasonable probability of misidentification in order to carry its burden of proof. State v. Rowan, 97-21 (La.App. 5 Cir. 4/29/97), 694 So.2d 1052.
To support his argument that the state failed to prove that he was the perpetrator, *223 the defendant asserts his identification by the witnesses was insufficient because they had seen him previously at court hearings. He also points out that only Ms. Hoang identified him from the photographs that were shown to all of the witnesses.
Despite these assertions by the defendant, we find that the evidence presented at trial was sufficient to prove the identity of the defendant as the perpetrator of the armed robbery. At trial, Mai Hoang testified that she had positively identified the defendant from "mug shot" books. Additionally, all three witnesses positively identified defendant at trial as the person who committed the robbery. Ms. Zeringue testified that she could not identify anyone from the photographs she was shown, but she explained that when she saw the defendant for the first time in "person" at a court hearing, her "heart jumped in [her] throat, and [she] knew exactly which one he was." Likewise, Mr. Nguyen testified he could not choose anyone from the books of photographs he was shown because the pictures were not very good quality, and because there were so many pictures. He, too, was positive at trial that the defendant was the robber. Mr. Nguyen stated that he looked very closely at the robber during the robbery, and said that he recognized the defendant because he had been in the store before. Finally, Mr. Nguyen also saw the defendant at a court hearing. Both Mr. Nguyen and Ms. Zeringue stated that when they had seen defendant at the court hearing, defendant was not the only person in prison clothing at court.
Ms. Hoang also knew the defendant because he had been to the store on previous occasions. She said that she picked out two pictures from the books of photographs because one of the pictures was better quality than the other. She, like the other witnesses, was positive that the defendant was the man who had robbed the store.
The defendant also urges that the evidence was insufficient because he recanted his statement at trial and because he testified at trial that he did not commit the robbery. Detective Harrell testified about the circumstances surrounding the defendant's statement, and the statement was played for the jury during the officer's testimony. After hearing all of the evidence, the jury obviously chose to believe the testimony of the state's witnesses, rather than defendant's testimony. It is not the function of the reviewing court to assess the credibility of witnesses or to reweigh the evidence. State v. Batiste, 96-1010 (La.App. 5 Cir. 1/27/98), 708 So.2d 764, writ denied, 98-913 (La.9/4/98), 723 So.2d 954.
Based on the foregoing discussion and the facts as set forth herein, we find that the evidence, when considered in the light most favorable to the prosecution, was sufficient for a rational trier of fact to conclude beyond a reasonable doubt that the defendant took something of value from another while armed with a dangerous weapon. Accordingly, this assignment likewise lacks merit.

EXCESSIVE SENTENCE
In his final assigned error, the defendant complains that his sentence of fifteen years at hard labor without benefit of parole, probation, or suspension of sentence, is excessive. To support this argument, the defendant points to his drug problem as well as the fact that this was his first felony offense.
Both the Eighth Amendment to the United States Constitution and Article I § 20 of the Louisiana Constitution prohibit the imposition of excessive or cruel punishment. A sentence is generally considered to be excessive if it is grossly disproportionate to the offense or imposes needless pain and suffering. In reviewing a sentence for excessiveness, the appellate court must consider the punishment in light of the harm to society and gauge whether the penalty is so disproportionate as to shock its sense of justice. State v. *224 Daigle, 96-782 (La.App. 5 Cir. 1/28/97), 688 So.2d 158, writ denied, 97-0597 (La.9/5/97), 700 So.2d 506. It is well settled that a trial judge is afforded wide discretion in determining a sentence, and the court of appeal will not set aside a sentence for excessiveness if the record supports the sentence imposed. State v. McCorkle, 97-966 (La.App. 5 Cir. 2/25/98), 708 So.2d 1212.
The defendant was convicted of armed robbery and thus faced a penalty of imprisonment at hard labor for not less than five years and not more than ninety-nine years, without benefit of parole, probation, or suspension of sentence. LSA-R.S. 14:64(B). The trial judge sentenced the defendant to fifteen years at hard labor without benefit of parole, probation, or suspension of sentence. We find that the record clearly supports the sentence imposed.
At the sentencing hearing, the defendant addressed the court. He told the court that he had "turned [his] life over to God" and pleaded for mercy from the court. The Pre-Sentence Investigation report (PSI) reflected that defendant was twenty-one years of age at sentencing and that this was his first felony offense, although he had one misdemeanor conviction. Several letters in support of the defendant's character were attached to the report, and the defendant also wrote a letter expressing his remorse. Based on the nature of this offense, the report recommended a sentence between fifteen and eighteen years imprisonment.
Before imposing sentence, the trial judge stated that he had considered the PSI, and noted the sentencing recommendation. The trial judge then gave extensive reasons for sentencing the defendant to fifteen years at hard labor without benefit of parole, probation, or suspension of sentence. The judge reviewed all the sentencing guidelines set forth in LSA-C.Cr.P. art. 894.1, noting that there is an undue risk that during the period of a suspended sentence, the defendant would commit another crime; that the defendant is in need of correctional treatment that can be provided most effectively by his commitment to an institution; and that a lesser sentence would deprecate the seriousness of the crime. The trial judge also noted that there were multiple victims, that the defendant threatened them and had a gun pointed at them throughout the robbery, placing them in fear of losing their lives. Also, the court noted the economic loss suffered by the victims. In mitigation, the trial judge noted the defendant's remorse and his status as a first felony offender. However, after reviewing the factors under LSA-C.Cr.P. art. 894.1, the trial judge concluded that "anything less than 15 years would be a travesty of justice."
Given these extensive reasons by the trial judge and considering the circumstances of the offense, we cannot say that the defendant's sentence of fifteen years at hard labor without benefit of parole, probation, or suspension is excessive. Accordingly, we find the defendant's claim of excessiveness to be without merit.

ERROR PATENT DISCUSSION
We have also reviewed the record for errors patent in accordance with LSA-C.Cr.P. art. 920 and State v. Oliveaux, 312 So.2d 337 (La.1975). Such a review reveals that the defendant was incorrectly advised of the provisions of LSA-C.Cr.P. art. 930.8. That article requires a trial judge to inform the defendant at sentencing that he has three years after his judgment of conviction and sentence becomes final within which to apply for post conviction relief. The trial judge in this case inaccurately informed the defendant that he had three years from "sentencing to have any post-conviction relief filed." Accordingly, we instruct the trial court to send appropriate written notice of the prescriptive period to the defendant within ten days of the rendering of this opinion and to file written proof in the record that the defendant received such notice. See *225 State v. Stelly, 98-578 (La.App. 5 Cir. 12/16/98), 725 So.2d 562.
For the reasons set forth herein, the defendant's conviction and sentence are affirmed and the case is remanded to the trial court for further action in accordance with this opinion.
CONVICTION AFFIRMED, REMANDED FOR FURTHER PROCEEDINGS.
NOTES
[1] It is noted that the defendant exhausted all of his peremptory challenges, and that Mr. Percle and Mr. Dufrene were challenged peremptorily.