864 So.2d 679 (2003)
STATE of Louisiana
v.
Ariax SMITH.
No. 03-KA-832.
Court of Appeal of Louisiana, Fifth Circuit.
December 9, 2003.
Jane L. Beebe, Louisiana Appellate Project, Gretna, LA, for Appellant, Ariax Smith.
Paul D. Connick, Jr., District Attorney, Terry M. Boudreaux, Alan D. Alario, II, Assistant District Attorneys, Gretna, LA, for Appellee, State of Louisiana.
Panel composed of Judges THOMAS F. DALEY, SUSAN M. CHEHARDY and WALTER J. ROTHSCHILD.
SUSAN M. CHEHARDY, Judge.
On May 31, 2002, the Jefferson Parish District Attorney's Office filed a bill of information charging defendant, Ariax Smith, with distribution of counterfeit cocaine, a violation of La. R.S. 40:967(A)(2). Defendant was arraigned on June 20, 2002, and entered a plea of not guilty. On September *680 11, 2002, the State amended the bill of information, changing the charge to possession with intent to distribute cocaine, a violation of La. R.S. 40:967(A)(1).
Trial commenced on November 6, 2002. On November 7, 2002, the twelve-member jury returned a verdict of guilty as charged. On November 14, 2002, the trial court heard and denied defendant's motions for new trial and post-verdict judgment of acquittal. On November 20, 2002, the court sentenced defendant to seven years at hard labor, with the first two to be served without benefit of parole, probation or suspension of sentence. Defendant made an oral motion for appeal.

FACTS
In early May of 2002, Agent Ricky Jackson, a New Orleans Police officer assigned to work undercover with a local drug interdiction task force headed by the Drug Enforcement Administration ("DEA"), received information from a confidential informant ("CI") that a man from Georgia would be arriving in the area in the next few days with four kilograms of cocaine to sell. The task force began an operation to interdict the sale and arrest the man.
During a telephone call from the Georgia man to the CI, Agent Jackson and the CI arranged to meet the man in the food court of Lakeside Mall in Metairie on the evening of May 6, 2002 to purportedly purchase the narcotics. During the telephone call, the man told Jackson how to recognize him, including the fact that he would be carrying two shopping bags from the store, Footlocker.
That night, Agent Jackson, who was wearing a hidden transmitter and recording device called a Kell, and the CI went to Lakeside Mall. Five other task force agents were in or around the mall conducting surveillance of the transaction.
Agent Jackson saw a man fitting the suspect's description and carrying two large shopping bags from Footlocker come into the mall. The man then entered the game arcade near the food court at Lakeside Mall. After Agent Jackson and the CI approached the suspect in the game arcade, the suspect suggested that they relocate to a men's restroom in the boy's department of the J.C. Penney department store in the mall.
The three men walked to the J.C. Penney's men's room. On the way, the suspect quickly frisked Agent Jackson to assure himself that Jackson was not a police officer. Upon entering the bathroom, the suspect removed a Reebok shoebox from one of the Footlocker bags, placed it on a sink, and opened it. In the shoebox, there were two packages of white powder, wrapped the way that kilograms of cocaine are generally packaged. The second bag contained a Timberland shoebox with two more packages of white powder. Agent Jackson asked, "Is it good?" Defendant responded, "Yes."
Agent Jackson told the suspect that the money was in his car. After walking with Agent Jackson to the J.C. Penney's exit, the suspect decided that he did not wish to exit the mall with Jackson. He agreed to meet Agent Jackson at the nearby Red Lobster Restaurant.
Immediately after Agent Jackson exited the mall, he notified the surveillance team that the suspect was leaving the building with the narcotics. Task Force Agents Sewell, Coffey, and Whitehurst stopped the suspect as he exited J.C. Penney and placed him under arrest. The suspect and defendant-herein, Ariax Smith, was carrying two Footlocker bags containing shoeboxes with kilogram-sized packages of white powder. Defendant immediately said, in reference to the white powder, "It's not real." Agent Sewell field-tested *681 samples from two of the packages seized from defendant. Both samples tested negative for cocaine.
Several months later, however, Charles Krone, an expert in the field of drug analysis and the identification of controlled dangerous substances, ran four tests on random samples of the four bricks of white powder seized from defendant on May 6, 2002. Two bricks tested negative for cocaine. The third brick was positive for cocaine in one area. The fourth brick was positive for cocaine in two areas. Krone found that the bricks also contained caffeine and tetracaine, which are "cutting" agents that dealers commonly use to increase the volume of their product.
In his first assignment of error, the defendant contends that the trial court erred in failing to grant the defense's motion for a new trial because there was insufficient evidence to support the specific intent of Mr. Smith to sell cocaine instead of bunk. Defendant complains that the evidence at trial was not sufficient to support his conviction, as the State failed to prove he had the specific intent to sell cocaine rather than counterfeit, or "bunk" cocaine.
The constitutional standard for testing the sufficiency of the evidence, as enunciated in Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979), requires that a conviction be based on proof sufficient for any rational trier of fact, viewing the evidence in the light most favorable to the prosecution, to find the essential elements of the crime beyond a reasonable doubt. State v. Juluke, 98-0341 (La.1/8/99), 725 So.2d 1291; State v. Pierce, 02-1267 (La.App. 5 Cir. 4/8/03), 846 So.2d 55, 59.
Under La.C.Cr.P. art. 851, the motion for new trial is based upon the supposition that an injustice has been done to the defendant, and unless such injustice is shown, the new trial motion shall be denied, regardless of the allegations upon which the motion is grounded. In a motion for new trial, the trial judge can only review the weight of the evidence and, as such, make a factual review as a "thirteenth juror," instead of following the sufficiency standard enunciated in Jackson v. Virginia, supra. The ruling on a motion for new trial is committed to the sound discretion of the trial judge and will be disturbed on appeal only where there is a clear showing of abuse of that discretion. State v. Badeaux, 01-618 (La.App. 5 Cir. 11/27/01), 802 So.2d 905, 908, writ denied, 01-3403 (La.10/4/02), 826 So.2d 1121.
In this case, defendant was charged with possession with intent to distribute cocaine. The State was required to prove that defendant knowingly and intentionally possessed drugs with the specific intent to distribute them. La. R.S. 40:967(A)(1).
Specific criminal intent is "that state of mind which exists when the circumstances indicate that the offender actively desired the prescribed criminal consequences to follow his act or failure to act." La. R.S. 14:10(1). Specific intent may be inferred from the circumstances of a transaction and from the actions of the accused. State v. Mitchell, 99-3342 (La.10/17/00), 772 So.2d 78, 82. Specific intent is an ultimate legal conclusion to be resolved by the trier of fact. State v. Graham, 420 So.2d 1126, 1128 (La.1982).
Defendant submits that the State proved, at most, that he had specific intent to distribute counterfeit cocaine. He points out that, when he was placed under arrest, he told officers the substance was not "real." He also stresses that several portions of the bricks tested negative for cocaine.
*682 Agent Jackson testified that he spoke with defendant and made a deal to buy four kilograms of cocaine from him. Agent Jackson also testified that, while they were in the men's room at J.C. Penney, he asked the defendant whether the product was "good," and defendant responded that it was.
Charles Krone testified that, in the two packages that contained cocaine, he found caffeine and tetracaine, which are common adulterating agents that are added to cocaine to increase the volume of material. Krone also testified that the two bricks that tested negative for cocaine were wrapped in transparent plastic wrap and brown tape, whereas the two bricks that produced positive results for cocaine were wrapped in rubber, transparent plastic, and tape. Krone explained that the rubber, a latex material, emits an odor that the packagers use to prevent drug-sniffing dogs from detecting the scent of cocaine.
At the hearing on defendant's motions for new trial and post-verdict judgment of acquittal, the trial judge commented, in part:
There was evidence in testimony at the trial that the substance was, in fact, cocaine. Further, there was testimony from the undercover agent that Mr. Smith made some comments to him while in the bathroom of the J.C. Penneys[sic], that this was good stuff. There is a basis for this jury to return the verdict that it did return. The Court finds no error or prejudice in their verdict with regard to the trial of this matter.
We find that no error in the trial court's denial of defendant's motion for new trial. Furthermore, after our review of the record, we find that any rational trier of fact, viewing the evidence in the light most favorable to the prosecution, could find that the State proved the essential elements of possession with intent to distribute cocaine beyond a reasonable doubt.
Finally, we have reviewed the record for errors patent according to La.C.Cr.P. art. 920. We note that the transcript of defendant's sentencing hearing reflects that the trial judge correctly restricted two years of defendant's sentence but the minute entry does not. Generally, when there is a discrepancy between the minutes and the transcript, the transcript prevails. State v. Lynch, 441 So.2d 732, 734 (La. 1983); State v. Parker, 01-0958, p. 8 (La. App. 5 Cir. 2/13/02), 812 So.2d 86, 91, writ denied, 02-1058 (La.2/21/03), 837 So.2d 624. Therefore, no action is required by this Court.
AFFIRMED.