900 So.2d 1 (2005)
STATE of Louisiana
v.
Donald HENSLEY.
No. 04-KA-617.
Court of Appeal of Louisiana, Fifth Circuit.
March 1, 2005.
*4 Paul D. Connick, Jr., District Attorney, 24th Judicial District, Terry M. Boudreaux, Anne Wallis, Walter Amstutz, Assistant District Attorneys, Parish of Jefferson, Gretna, LA, for Plaintiff/Appellee.
Holli Herrle-Castillo, Louisiana Appellate Project, Marrero, LA, for Defendant/Appellant.
Panel composed of Judges THOMAS F. DALEY, MARION F. EDWARDS and SUSAN M. CHEHARDY.
MARION F. EDWARDS, Judge.
Defendant, Donald Hensley, appeals his conviction and sentence for armed robbery. For the following reasons, the defendant's conviction and sentence are affirmed, and we remand to correct errors patent on the face of the record.
The District Attorney for Jefferson Parish filed a bill of information charging the defendant, Donald Hensley, with armed robbery, a violation of LSA-R.S. 14:64. Hensley pled not guilty at arraignment. On February 4, 2003, a twelve-person jury found Hensley guilty as charged.
On February 10, 2003, the trial judge denied Hensley's motion for new trial. Hensley was sentenced to sixty years of imprisonment at hard labor without benefit of parole, probation, or suspension of sentence on February 18, 2003. On that same day, the State filed a multiple offender bill of information alleging Hensley to be a fourth felony offender, and defendant *5 pled not guilty. On August 22, 2003, a multiple bill hearing was held, and Hensley was adjudicated a multiple offender. The trial court vacated Hensley's original sentence and sentenced him under LSA-R.S. 15:529.1 to life imprisonment at hard labor without benefit of parole, probation, or suspension of sentence. The defense filed a motion to reconsider the sentence, which was denied, and a motion for appeal, which was granted. Hensley timely filed the present appeal.
On April 26, 2002, Hoang Dihn was working at Kim's Grocery, a family-owned grocery store on Garden Road, when he was held at gunpoint and the store was robbed. At about 9:00 p.m., Hoang was behind the counter working the cash register and his brother, Nhan Dihn, was in the back cleaning the kitchen as they were about to close. At that time, a man approached the cash register to purchase a bottle of Mad Dog 20/20. Hoang checked him out, bagged his bottle and proceeded to give him change for his $20 bill. While returning the change, he froze when he saw a gun pointed at his head and heard a demand for the money in the cash register. In Vietnamese, a scared Hoang told his brother that they were being robbed. As Nhan approached, the gunman ordered him to stay back while pointing the gun at him. Hoang gave the gunman all the money from the register.
After receiving the money from Hoang, the robber ran out of the store and Nhan chased after him, while Hoang stayed in the store. Nhan brought with him a small loaded handgun from behind the register. At this time their uncle and owner of the store, Steven Dihn, was outside cleaning up and helped chase the robber as well. Hoang pressed the panic button underneath the counter when the gun was pointed at him, and later called 911 just in case the alarm was not triggered.
Nhan chased the robber for one-half to three-quarters of a mile and admitted to firing two shots in the air while chasing him. After Nhan fired the gun into the air, the robber threw his bike down and ran. Ultimately, Nhan caught him hiding under a bush, and the robber handed over the money while asking that he not be hurt or killed. Nhan made the decision to chase the robber after witnessing the robber unarm himself, throwing the gun used in the robbery under a car. Nhan testified that, when he found Hensley, a bottle of Mad Dog 20/20 was in his possession. He and his uncle dragged the robber back to the store to wait for the police. Nhan recovered the gun from under the car.
Shortly after bringing Hensley back to the store, the police arrived. Deputy Dennis Couvillion responded to the call and, upon arrival, was advised that Hensley robbed the store and was chased down and caught by the storeowners. He was presented with the gun and money and then placed Hensley under arrest. Douglas Graffeo also responded to the call and, upon arrival, recovered evidence. He took the gun into evidence and, after pictures were taken of the money and the Mad Dog 20/20, he returned it to the storeowners and transported Hensley to lockup. He testified that he was not made aware that Nhan had fired the gun and did not have any knowledge about the bicycle. After being presented with his report, State's Exhibit 8, he read that they were not able to recover fingerprints at the crime scene.
Hensley testified that, after playing cards and drinking with co-workers that night, he returned home between 8:15 and 8:30 p.m. to discover that his live-in girl-friend had not cooked. She wanted something to eat but refused to give him the car keys because he had been drinking. Using his stepdaughter's bicycle, he went to the store and purchased a ham and cheese *6 sandwich and a wine cooler. He left the store and smoked outside with some guys. While riding home on his bicycle, defendant states that he heard gunshots, and when he looked back he saw someone in the middle of the street shooting at him. He immediately fell off his bike, began running, and hid in the first place available. When he was caught, he asked that he not be shot, because he had done nothing wrong. He was brought back to the store. Without telling the police about the bike or the sandwich and wine cooler, Hensley was placed in the police car. He testified that he did not take any money and did not have a gun or Mad Dog in his possession.
While testifying, Hensley admitted to three prior convictions involving simple robbery and aggravated burglary.
Hensley contends that the trial judge should have granted a new trial because the evidence presented was not sufficient to support his conviction, thus rendering the verdict contrary to the law and evidence.[1] Specifically, Hensley argues that the State failed to negate the reasonable probability of misidentification and that no physical evidence was presented to link defendant to the crime. The State responds that the verdict was not contrary to the law or evidence and that it proved its case through the testimony of four witnesses.
The reviewing court should first determine sufficiency of evidence when issues are raised on appeal as to the sufficiency of the evidence and as to one or more trial errors. When the entirety of the evidence, including evidence erroneously admitted, is insufficient to support the defendant's conviction, the defendant must be discharged as to that crime, and any issues regarding trial errors become moot.[2] Therefore, defendant's second assignment of error will be addressed first.
In reviewing the sufficiency of the evidence, the appellate court shall determine whether the evidence, viewed in the light most favorable to the prosecution, was sufficient for any rational trier of fact to find the essential elements of the crime beyond a reasonable doubt.[3] When circumstantial evidence is used to prove the commission of the offense, LSA-R.S. 15:438 provides that, "assuming every fact to be proved that the evidence tends to prove, in order to convict, it must exclude every reasonable hypothesis of innocence." Under LSA-R.S. 15:438, the fact-finder must be satisfied that the overall evidence excludes every reasonable hypothesis of innocence when analyzing circumstantial evidence.[4] The Jackson standard of review is an objective standard used for testing both direct and circumstantial evidence for reasonable doubt.[5]
LSA-C.Cr.P. art. 851(1) provides that defendant's motion for new trial shall be granted when the verdict is contrary to the *7 law and the evidence. In considering a motion for new trial, the trial judge must only review the weight of the evidence, making a factual review as a "thirteenth juror," instead of following the Jackson standard for sufficiency.[6] A motion for new trial ruling is committed to the trial judge's sound discretion and will not be disturbed on appeal unless there is a clear showing of abuse of that discretion.[7]
In the present case, defendant was convicted of armed robbery, a violation of LSA-R.S. 14:64, defined as "the taking of anything of value belonging to another from the person of another or that is in the immediate control of another, by use of force or intimidation, while armed with a dangerous weapon."
Encompassed in proving the elements of armed robbery is the necessity of proving the identity of the defendant as the perpetrator of the crime. When identification is the key issue in the case, to carry its burden of proof the State is required to negate any reasonable probability of misidentification.[8]
Although Hensley contends that the State failed to meet its requisite burden, the record contains sufficient evidence to support his conviction. Hoang testified that he was held at gunpoint and robbed of money from the cash register. Hoang further testified that he was able to get a good look at everything, and identified the gun in court as being similar to the one pointed at him during the robbery. Likewise, he identified Hensley in court as the robber, stating that he could not forget his face. He assured that, even if he had not seen defendant when he was brought back into the store after the robbery, he could still have identified him.
Nhan, likewise, identified Hensley as the person who robbed the store and as the one he found lying under a bush. Although Nhan specifically remembered the scar on defendant's face, Hoang did not recall seeing any scar. Nhan identified the gun in court as the one he recovered after seeing Hensley throw it under a car. (He also identified, through pictures, the money, Mad Dog 20/20 bottle, and the gun from the night of the robbery. Hensley was also identified by Deputies Couvillion and Graffeo.
Although the gun used for the robbery was a BB gun, Hoang and Nhan both testified that they could not tell the difference between the BB gun and a real gun. Deputy Graffeo testified that even he would not have been able to tell the difference since this particular BB gun is styled after a Colt .45. Regardless, according to Deputy Graffeo, this BB gun was loaded and fully functional, capable of firing projectiles and causing great bodily damage.
The store's money was taken from the cash register which Hoang was working at the time. Both witnesses testified that they were scared and intimidated by the situation, especially because the robber pointed a gun at them. Although the gun was a BB gun, it could be considered a dangerous weapon. Also, Hensley was identified as the robber by both witnesses.
It is the role of the fact-finder to weigh the respective credibilities of the witnesses, and a reviewing court will not second-guess the credibility determinations beyond the sufficiency evaluations under *8 the Jackson standard of review.[9] Considering the evidence adduced at trial, we find that a rational trier of fact could have found Hensley guilty as charged. We also do not find that the trial judge abused its discretion in denying defendant's motion for a new trial.
Hensley next argues that the trial court erred in failing to excuse Dayan Guirovich and Agueda Lemus for cause after Ms. Guirovich claimed she was not sure if her relation to law enforcement officers would affect her ability to be impartial, and Ms. Lemus, advised the court she had a problem understanding English. The State responds that defendant waived his right to assert this claim on appeal as to Ms. Lemus and that the trial judge did not abuse his discretion in denying the challenge for cause as to Ms. Guirovich.
Prejudice is presumed when a trial court erroneously denies a challenge for cause, and the defendant ultimately exhausts all of his peremptory challenges.[10] An erroneous ruling which deprives defendant of a peremptory challenge is a substantial violation of his rights, constituting a reversible error.[11] As a result, to prove there has been an error which warrants reversal of a conviction and sentence, a defendant need only demonstrate: (1) the trial court's erroneous denial of a challenge for cause; and (2) all peremptory challenges were used.[12] The record in this case reflects that defendant exhausted all of his peremptory challenges. Therefore, the issue is whether the trial court erred in denying defendant's challenges for cause.
LSA-C.Cr.P. art. 797 provides, in pertinent part, that a prospective juror may be challenged for cause if:
(1) The juror lacks a qualification required by law;
(2) The juror is not impartial, whatever the cause of his partiality. An opinion or impression as to the guilt or innocence of the defendant shall not of itself be sufficient ground of challenge to a juror, if he declares, and the court is satisfied, that he can render an impartial verdict according to the law and the evidence[.]
A trial court is granted broad discretion in ruling on challenges for cause, and such rulings will only be reversed when a review of the entire voir dire reveals the judge abused his discretion.[13] However, a challenge for cause should be granted, even when a prospective juror assures his ability to remain impartial, if the juror's responses as a whole reveal facts from which bias, prejudice or inability to render a judgment according to the law may be reasonably implied.[14] The trial court possesses great discretion in ruling on challenges for cause because it "`has the benefit of seeing the facial expression and hearing the vocal intonations of the members of the jury venire as they respond to questioning.'"[15]
*9 Ms. Lemus stated she had a "little problem with understanding English." However, she has lived in the United States for twenty years and speaks English daily. In addition, she previously served on a jury in Jefferson Parish. She admitted that she understood only most of what had happened in court so far. Defense counsel objected after the court denied its challenge for cause, and she was accepted as a juror.
Defendant had only used seven of his twelve peremptory challenges when he accepted Ms. Lemus as a juror. Since Hensley accepted Ms. Lemus after his challenge for cause was rejected by the judge without exercising one of his remaining peremptory challenges, he waived his right to assert his claim on appeal as to that juror.[16]
A juror's association with law enforcement officers does not by itself disqualify the juror from service.[17] The question becomes whether the juror could assess the witnesses' credibility independent of that relationship.[18] When a prospective juror states an opinion seemingly prejudicial to the defense, but after further inquiry demonstrates the ability and willingness to remain impartial in deciding the case according to the law and evidence, a challenge for cause should not be granted.[19]
Ms. Guirovich stated that her husband, brother-in-law, and sister-in-law were Jefferson Parish deputies. She further stated that she discusses her husband's work with him. However, she initially told the judge her relationships would not affect her ability to be fair and impartial and was capable of basing her decision solely on the evidence and testimony in the case. Ms. Guirovich was later questioned by defense counsel:
MS. FUSELIER: Is that going to affect your ability to be fair to the defendant?
MS. GUIROVICH: I would hope it wouldn't be.
MS. FUSELIER: But you don't know?
MS. GUIROVICH: Don't know.
MS. FUSELIER: You're not sure?
MS. GUIROVICH: Not sure, no, ma'am.
Because of these comments, defense counsel challenged her for cause. The court denied the request, stating that she had answered his initial questions and that he did not believe this rose to the level of cause. Defense counsel objected. It was then clarified that her husband was assigned to the Fourth District, while the officers testifying were from the Third District. Defense counsel was forced to use a peremptory challenge.
In State v. Eskano,[20] a prospective juror was challenged for cause after stating that she was not sure if she could be impartial due to her past experiences as a crime victim. Defendant argued she was never *10 rehabilitated after making these comments, and he was forced to use a peremptory challenge to excuse her.[21] This Court found that the trial judge did not abuse his discretion in denying the challenge for cause because the trial judge accepted her two statements that she could be impartial.[22]
Similarly, it does not appear that the trial court abused its discretion in its denial of a challenge for cause as to Ms. Guirovich. At no time did Ms. Guirovich unequivocally state that she could not be impartial. In fact, initially she declared her ability to be impartial. The trial judge had the benefit of examining her demeanor and intonations before making his ruling. Upon reviewing the entire record of voir dire, we do not find that the trial court abused its discretion.
Next, Hensley claims that his life sentence imposed by the trial court in accordance with the statute for a fourth felony offender was excessive because the trial court failed to consider mitigating factors and a Dorthey downward departure. The State responds that the sentence should not be set aside as excessive.
Hensley orally moved for reconsideration of the life sentence imposed upon him as a multiple offender and filed a written motion to reconsider the sentence. This motion was denied. The written motion, filed on August 22, 2003, asked the court to reconsider the sentence in accordance with LSA-C.Cr.P. art. 881.1 on the basis that the sentence imposed was cruel, excessive and unusual and inconsistent with the guidelines set forth in LSA-C.Cr.P. art. 894.1. However, this Court has recognized that compliance with the sentencing guidelines of LSA-C.Cr.P. art. 894.1 is not required when the sentence imposed is statutorily prescribed under the Habitual Offender Law.[23]
The failure to file a motion to reconsider sentence, or to state specific grounds upon which the motion is based, limits a defendant to a review of his sentence for constitutional excessiveness only.[24] Defendant failed to set forth specific grounds upon which his motion was based. Accordingly, his sentence will be examined only for constitutional excessiveness.
The Eighth Amendment to the U.S. Constitution and Article I, Section 20 of the Louisiana Constitution prohibit the imposition of excessive punishment. A sentence within the prescribed statutory limit may still violate a defendant's constitutional right against excessive punishment.[25] When reviewing whether a sentence is excessive, the appellate court must consider the punishment in light of the harm to society and gauge whether the penalty is so disproportionate as to shock its sense of justice.[26]
Maximum sentences are generally reserved for cases involving the *11 most serious violations of the offense charged and for the worst type of offender.[27] However, the trial judge is given wide discretion in sentencing, and the appellate court will not set aside a sentence as excessive if the record supports the sentence imposed.[28] A reviewing court may not set a sentence aside absent a manifest abuse of discretion.[29]
The Louisiana Supreme Court has stated that the question presented when reviewing a defendant's sentence is not "whether another sentence would have been more appropriate but whether the trial court abused its broad sentencing discretion."[30] Prior criminal activity, not limited to convictions, is one factor to be considered by the trial court when imposing a sentence.[31]
Defense counsel now makes a Dorthey[32] argument asserting that a downward deviation from the mandatory sentence was warranted. If the trial judge determines that an enhanced punishment mandated by the Habitual Offender Law, LSA-R.S. 15:529.1, makes no "measurable contribution to acceptable goals of punishment" or that the sentence amounts to nothing more than "the purposeful imposition of pain and suffering" and is "grossly out of proportion to the severity of the crime," the court has the option and duty to reduce such sentence to one that would not be constitutionally excessive.[33]
It is presumed that a mandatory sentence under the habitual offender law is constitutional.[34] A court may only depart from the mandatory sentence upon finding clear and convincing evidence in the case to rebut the presumption of constitutionality.[35] It is the defendant's burden to rebut the presumption of constitutionality by demonstrating: "`[he]is exceptional, which in this context means that because of unusual circumstances this defendant is a victim of the legislature's failure to assign sentences that are meaningfully tailored to the culpability of the offender, the gravity of the offense, and the circumstances of the case.'"[36]
There must be substantial evidence to rebut the constitutionality presumption.[37] The "trial court may not depart from the legislatively mandated minimum simply because of some subjective impression or feeling about the defendant."[38] *12 As explained by the Louisiana Supreme Court:
[t]his is because the defendant's history of violent or non-violent offenses has already been taken into account under the Habitual Offender Law for third and fourth offenders, which punishes third and fourth offenders with a history of violent offenses more severely than those with a history of non-violent offenses.[39]
It has been strongly emphasized by the Louisiana Supreme Court that downward departures from a mandatory minimum sentence should occur in rare situations.[40] The Legislature maintains the sole authority to define criminal conduct and provide penalties for that conduct.[41] Although courts have the power to declare these sentences excessive, this should only be done when the court is clearly and firmly convinced that the minimum sentence is excessive.[42] A trial judge cannot rely solely upon the nonviolent nature of the present crime or of previous crimes to justify the rebuttal of the constitutionality presumption.[43] As stated in Johnson,
[u]nder this statute the defendant with multiple felony convictions is treated as a recidivist who is to be punished for the instant crime in light of his continuing disregard for the laws of our state. He is subjected to a longer sentence because he continues to break the law.[44]
In the present case, Hensley was convicted of armed robbery and, after considering his criminal history, the judge sentenced him to sixty years in prison. This sentence was vacated, however, and defendant was sentenced to life imprisonment as a fourth felony offender under LSA-R.S. 15:529.1. Hensley pled guilty to simple robbery in 1984 and to aggravated burglary in 1985; in addition, he was found guilty of simple robbery in 1987.[45]
Under the multiple bill statute, LSA-R.S. 15:529.1(A)(1)(c), if the fourth or subsequent felony is such that, upon a first conviction the defendant would be punishable by imprisonment for any term less than his natural life then:
(i) The person shall be sentenced to imprisonment for the fourth or subsequent felony for a determinate term not less than the longest prescribed for a first conviction but in no event less than twenty years and not more than his natural life; or
(ii) If the fourth felony and two of the prior felonies are felonies defined as a crime of violence under R.S. 14:2(13), *13 . . . . . [T]he person shall be imprisoned for the remainder of his natural life, without benefit of parole, probation, or suspension of sentence.
LSA-R.S. 14:64(B) provides that the sentence for armed robbery shall be imprisonment at lard labor for not less than ten years and for not more than ninety-nine years, without benefit of parole, probation, or suspension of sentence. According to LSA-R.S. 14:2(13), armed robbery, simple robbery and aggravated burglary are all crimes of violence.
Hensley walked into the grocery store that night with a gun and subsequently robbed the store by pointing a loaded gun at Hoang and Nhan. Although the gun was a BB gun, it was capable of causing great bodily harm and created much fear upon the brothers. Additionally, defendant had at least three prior violent felony convictions, which show a propensity for felonious behavior. In light of the circumstances surrounding the armed robbery, and defendant's extensive criminal history, we find that the trial court did not abuse its discretion in sentencing defendant.
The record was reviewed for errors patent, according to LSA-C.Cr.P. art. 920, State v. Oliveaux,[46] and State v. Weiland.[47] The following matters are noted:
The trial court failed to properly inform defendant of the prescriptive period for filing post-conviction relief pursuant to LSA-C.Cr.P. art. 930.8. The trial court advised defendant he had "two years from the date this sentence becomes final to file for post-conviction relief." This Court has held that the failure to advise defendant that the prescriptive period runs from the time his conviction and sentence become final is incomplete.[48] Further, defendant was advised of the prescriptive period after his original sentencing which was vacated and was not re-advised when sentenced as a multiple offender.[49] Therefore, we remand the case and order the district court to properly inform defendant of the time from which prescription for post-conviction relief runs by sending written notice of such to defendant within ten days of the rendition of the appellate opinion and to file written proof that defendant received the notice in the record.[50]
We note that there is a potential issue regarding the sufficiency of the evidence introduced at the habitual offender hearing. Specifically, the record does not reflect that the State proved that the underlying offense (April 26, 2002) was committed within ten years of defendant's actual discharge from his predicate conviction (November 20, 1987), as required by the version of LSA-R.S. 15:529.1(C) at the time of the offense. The trial judge did state, however, that the felonies were timely within the cleansing period required by law.
Hensley has not contested his habitual offender finding on appeal. In State v. *14 Guzman,[51] the Louisiana Supreme Court held that whether a trial court complied with LSA-C.Cr.P. art. 556.1 in a guilty plea colloquy is not subject to error patent review, but must instead be designated as an assignment of error by the defendant on appeal. Based on the foregoing, we find that no corrective action is required in light of the fact defendant has not complained of this error.
It further appears that there are inconsistencies with the minute entries and commitment in comparison to the transcript. For instance, although the minutes do not reflect that the jurors were sworn in, the transcript does. The transcript prevails over the minute entry or commitment where there is a discrepancy.[52] Likewise, although the minutes reflect that defendant was advised of the prescriptive period of post-conviction relief when he was re-sentenced as a fourth felony offender, the transcript does not.
Finally, the minutes reflect that Hensley was given credit for time served; however, the transcript does not. Failure of a trial court to give credit for time served requires no corrective measures.[53] Credit for time served is self-operating even on a silent record due to LSA-C.Cr.P. art. 880 as amended.[54]
Accordingly, for the foregoing reasons, defendant's conviction and sentence are affirmed, and we remand to correct errors patent on the face of the record.
AFFIRMED; REMANDED.
DALEY, J., concurs with reasons.
DALEY, J., concurs with reasons:
I concur with the results reached by the majority in this case, but write separately to express my concern over the challenge for cause regarding Juror, Ms. Guirovich. Ms. Guirovich stated that her husband, brother-in-law, and sister-in-law were Jefferson Parish deputies and while she initially indicated that those relationships would not affect her ability to be fair and impartial, on examination by defense counsel, she indicated she was "not sure" if those relationships would affect her ability to be fair to the defendant. While a family relationship with or to a law enforcement officer is not, of itself, grounds for challenge for cause, the ability of a prospective jury to assess the credibility of each witness independent of the effect of that law enforcement relationship is crucial to our system of justice. See State v. Taylor, 99-296 (La.App. 5 Cir. 7/27/99), 740 So.2d 216, writ denied, 99-2609 (La.3/17/00), 756 So.2d 322. In State v. Alberto, 95-540 (La.App. 5 Cir. 11/28/95), 665 So.2d 614, this Court indicated that "careful scrutiny" must be applied to the relationship between a prospective juror with a police officer in assessing whether that juror can be independently neutral.
I believe that prospective Juror Guirovich's response that she was "not sure" is sufficient to validate defendant's challenge for cause. However, in State v. Kang, 02-2812 (La.10/21/03), 859 So.2d 649, the Louisiana Supreme Court has instructed this Court to give deference to the trial court's finding regarding a prospective juror's ability to be fair. The Supreme Court instructs that the appellate court, in reviewing challenges for cause, must look at *15 that juror's voir dire as a whole and not focus on individual responses. Prior to the Supreme Court's instruction in Kang, prospective Juror Guirovich's response that she was "not sure" that she could be fair would require at the least some clarifying inquiry or rehabilitation as a basis for denying the challenge for cause. I find no basis in this record to allow me to conclude that prospective Juror Guirovich's final voir dire answer that she was "not sure" she could be fair was clarified or that she was rehabilitated.
I write separately to bring this to the attention of the Supreme Court in the hopes that they will reconsider the position they took in State v. Kang. I believe that when a juror indicates that they are "not sure" they can be fair, even when they previously indicated in response to general questions that they could be fair, rehabilitation is required before the challenge for cause can be denied.
Absent the Supreme Court's reversal of this Court's position in State v. Kang, I would not hesitate to dissent from the majority opinion and advocate reversal of the defendant's conviction based on the fact that the trial court committed legal error when it denied the challenge for cause as to Juror Guirovich. I suggest the Supreme Court clarify or reconsider their view as expressed in Kang on the deference the appellate court should give the trial court's ruling on a challenge for cause.
NOTES
[1] Although a motion for post-verdict judgment of acquittal was not filed by defendant in this case, the Louisiana Supreme Court has recognized that the issue of sufficiency of the evidence is properly reviewed on appeal even in the absence of a motion for post-verdict judgment of acquittal. See, State v. Marcantel, 00-1629 (La.4/3/02), 815 So.2d 50, 56, fn. 2.
[2] State v. George, 95-0110 (La.10/16/95), 661 So.2d 975, 978; State v. Conner, 02-363 (La. App. 5 Cir. 11/13/02), 833 So.2d 396, 401, writ denied, 02-3064 (La.4/25/03), 842 So.2d 396.
[3] Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979).
[4] See, State v. Marcantel, 00-1629 (La.4/3/02), 815 So.2d 50, 56.
[5] Id.
[6] State v. Smith, 03-832 (La.App. 5 Cir. 12/9/03), 864 So.2d 679, 681.
[7] State v. Badeaux, 01-618 (La.App. 5 Cir. 11/27/01), 802 So.2d 905, 908, writ denied, 01-3403 (La.10/4/02), 826 So.2d 1121.
[8] State v. Zeno, 99-69 (La.App. 5 Cir. 8/31/99), 742 So.2d 699, 706, writ denied, 00-0105 (La.6/30/00), 765 So.2d 1065.
[9] State v. Wallace, 00-1745 (La.App. 5 Cir. 5/16/01), 788 So.2d 578, 584, writ denied, 01-1849 (La.5/24/02), 816 So.2d 297.
[10] State v. Kang, 02-2812 (La.10/21/03), 859 So.2d 649, 651.
[11] State v. Bush, 02-0247 (La.App. 5 Cir. 6/26/02), 822 So.2d 859, 865, writ denied, 02-1887 (La.1/24/03), 836 So.2d 42 (citing State v. Anthony, 98-0406 (La.4/11/00), 776 So.2d 376, cert. denied, 531 U.S. 934, 121 S.Ct. 320, 148 L.Ed.2d 258 (2000)).
[12] State v. Kang, 859 So.2d at 652
[13] State v. Carmouche, 01-405 (La.5/14/02), 872 So.2d 1020, 1029 (citations omitted).
[14] Id.
[15] State v. Stein, 04-23 (La.App. 5 Cir. 4/27/04), 874 So.2d 279, 290-291, writ denied, 04-1345 (La.11/8/04), 885 So.2d 1122 (citations omitted).
[16] State v. Stein, 874 So.2d at 292 (citing State v. Bourque, 622 So.2d 198, 229-230 (La. 1993), overruled on other grounds, State v. Comeaux, 93-2729 (La.7/1/97), 699 So.2d 16; State v. Kennerson, 96-1518 (La.App. 3 Cir. 5/7/97), 695 So.2d 1367, 1383).
[17] State v. Manning, 03-1982 (La.10/19/04), 885 So.2d 1044 (citation omitted).
[18] State v. Taylor, 99-296 (La.App. 5 Cir. 7/27/99), 740 So.2d 216, 220, writ denied, 99-2609 (La.3/17/00), 756 So.2d 322 (citing State v. Morris, 96-1008 (La.App. 1 Cir. 3/27/97), 691 So.2d 792, writ denied, 97-1077 (La. 10/13/97), 703 So.2d 609).
[19] State v. Taylor, 740 So.2d at 220.
[20] 00-101 (La.App. 5 Cir. 1/30/01), 779 So.2d 148, 153,
[21] Id.
[22] Id. at 154.
[23] State v. Johnson, 01-0842 (La.App. 5 Cir. 2/13/02), 812 So.2d 106, 118, writ denied, 02-1037 (La.3/21/03), 840 So.2d 532 (citation omitted).
[24] State v. Hester, 99-426 (La.App. 5 Cir. 9/28/99), 746 So.2d 95, 103, writ denied, 99-3217 (La.4/20/00), 760 So.2d 342.
[25] State v. Sweeney, 443 So.2d 522 (La. 1983); State v. Jones, 98-1055 (La.App. 5 Cir. 2/23/99), 729 So.2d 95.
[26] State v. Daigle, 96-782 (La.App. 5 Cir. 1/28/97), 688 So.2d 158, 159, writ denied, 97-0597 (La. 11/5/97), 700 So.2d 506.
[27] State v. Quebedeaux, 424 So.2d 1009, 1014 (La.1982).
[28] State v. Jones, 98-1055 (La.App. 5 Cir. 2/23/99), 729 So.2d 95.
[29] State v. Guzman, 99-1528, 99-1753 (La.5/16/00), 769 So.2d 1158, 1167.
[30] State v. Jones, 99-2207 (La.1/29/01), 778 So.2d 1131, 1133.
[31] State v. McCorkle, 97-966 (La.App. 5 Cir. 2/25/98), 708 So.2d 1212, 1219 (citing State v. Washington, 414 So.2d 313, 315 (La.1982)).
[32] State v. Dorthey, 623 So.2d 1276 (La. 1993).
[33] State v. Dorthey, 623 So.2d at 1280.
[34] State v. Johnson, 97-1906 (La.3/4/98), 709 So.2d 672, 676.
[35] Id.
[36] State v. Johnson, supra at 676 (quoting State v. Young, 94-1636 (La.App. 4 Cir. 10/26/95), 663 So.2d 525, 528, writ denied, 95-3010 (La.3/22/96), 669 So.2d 1223).
[37] In State v. Stevenson, 02-769 (La.App. 5 Cir. 1/28/03), 839 So.2d 340, writ denied, 03-0833 (La.10/31/03), 857 So.2d 472, the defendant was convicted of attempted armed robbery and armed robbery and was sentenced as a fourth offender to life imprisonment. This Court held that the life sentence was not constitutionally excessive after defendant failed to offer evidence to rebut the presumption of constitutionality.
[38] State v. Bell, 97-1134 (La.App. 5 Cir. 2/25/98), 709 So.2d 921, 927, writ denied, 98-0792 (La.9/16/98), 721 So.2d 477.
[39] State v. Lindsey, 99-3256 c/w 99-3302 (La.10/17/00), 770 So.2d 339, 343, cert. denied, 532 U.S. 1010, 121 S.Ct. 1739, 149 L.Ed.2d 663 (2001). Although Lindsey was decided before the amendments to the Habitual Offender Law, its rationale is still viable. The 2001 amendments to LSA-R.S. 15:529.1 still maintain a graduation of punishment based on the non-violent and violent nature of the underlying and predicate offenses. The amended version is simply more lenient in that life sentences are mandated less often. State v. Stevenson, 839 So.2d at 344.
[40] State v. Lindsey, supra; State v. Johnson, 709 So.2d at 677.
[41] State v. Johnson, 709 So.2d at 675 (citations omitted).
[42] Id. at 676.
[43] Id. at 676.
[44] Id. at 677.
[45] The State also asked the judge to consider another conviction the State did not use as a predicate felony.
[46] 312 So.2d 337 (La.1975).
[47] 556 So.2d 175 (La.App. 5 Cir.1990).
[48] State v. Grant, 04-341 (La.App. 5 Cir. 10/26/04), 887 So.2d 596, 598 (citing State v. George, 99-887 (La.App. 5 Cir. 1/4/00), 751 So.2d 973, 975 (emphasis as found in the original)).
[49] In State v. Kelly, 01-321 (La.App. 5 Cir. 10/17/01), 800 So.2d 978, 986-987, writ denied, 01-3266 (La.11/1/02), 828 So.2d 565, this Court remanded the case for the trial judge to inform defendant of the prescriptive period for post-conviction relief after the trial judge advised defendant of the prescriptive period when imposing his original sentence but failed to re-advise him of the period when re-sentencing him as a third felony offender.
[50] Id.
[51] 99-1753 (La.5/16/00), 769 So.2d 1158, 1162,
[52] State v. Lynch, 441 So.2d 732 (La. 1983).
[53] State v. Pascual, 98-1052 (La.App. 5 Cir. 3/30/99), 735 So.2d 98, 105.
[54] Id.